Chief Justice-Robertson
delivered the Opinion of the Court.
The only question itl this case, is, whether Anne Jenicjns is entitled to dower in the estate of Jonathan Jenkins, deceased, with whom she intermarried after it had been ascertained, by regular inquisition, that he was of “ unsound mincl,” and with whom she continued to cohabit from the date of the marriage until his death, although' he continued, as is alleged and not denied by her, to be of unsound mincl, without any lucid interval, from the date of the inquisition.
She insists, first, that there is no sufficient proof of his incapacity ; second, that mere unsounclness of mind will not avoid a contract- of marriage, and that the wife of even an idiot is entitled to dower.
The hill charges that a man was of unsound mind at the time of his marriage, and so continued till his death: the answer, passing by the gist of the charge,'admits that she was his lawful wife at the time of his death, and therefore,as such,insists upon her right to dowei1 —allegation of the hill taken pro confesso.
The.terms “ of unsound mind” or non compos mentis” imply a total deprivation of reason, idiocy, lunacy, or any other description of mad ness.
A person of unsound mind cart not be married. The performance of a marriage ceremony and continued cohabitation till death, with one in that condition, will not constitute a legal marriage; nor give claim to dower, or courtesy, in his, or her, estate.
Mrst. The alleged unsoundness of mind at the date of the union, and the continuation of that unsoundness until dissolution, must be deemed to have been admitted by the answer to the bill filed in this case for distribution. To that bill, Anne Jenkins merely says, that she "admits that she was the lawful wife of Jonathan Jenkins, deceased, at the time of his death ; she therefore, as such, insists upon her right to dower.”
Now the bill, not only did not suggest that she was the lawful wife of Jonathan Jenkins, but averred that she never was his wife ; and, after setting forth the inquisition and the appointment of a'committee, alleged, as before stated, that he was never restored to soundness of mind. Such a response, to such allegations, must be deemed a tacit admission of their truth. And, consequently, this court cannot presume, even were such presumption allowable were there no .evidence but the inquisition, that Jonathan Jenkins, at any time after the marriage or the inquisition, could, by'cohabitation and recognition or otherwise, have become a husband de jure, or defacto.. The alleged unsoundness of his mind must, therefore, be deemed to have.been conclusively established.
Second. The terms “ of unsound mind” have a determinate and technical import, and which is very comprehensive. They do not (when used in a legal sense,) mean imbecility of mind merely, but are synonymous with non compos mentis, and import necessarily " a total deprivation of reason,” comprehending idiocy, lunacy and adventitious madness, either temporary or permanent — ■ remediable or irremediable. See the fourth, fifth and sixth numbers of the 'Laxo Library, containing a late " practical treatise on the law concerning lunatics, idiots, and persons of unsound mind — by Leonard Shelford.”
Thus understanding,, as it is our duty judicially to understand, the phrase “ of unsound mind,” when used in the inquisition, and in the bill, we come to the *104 question — can a person, whilst in such a state of mind, make a contract of marriage that will be effectual for anY legal purpose ? If we consult reason, analogy, or law, the answer must be no.
^ contract is the agreement of minds. If there be no reason, or volition, 'there is no mind which can make a valid agreement. A person of “ unsound mind,” — an idiot, for example, is, as to all intellectual purposes, dead; and such a being, destitute of intellectual light and life, is as incapable as a dead body of being a husband or a wife, in a legal, rational or moral sense.
W.e know that Lord Coke (1 Thomas’ Coke, 662,) said — u the wife of an idiot shall be endowed.” But, in a note, the editor says, that such is not now the doctrine of the courts. It is not improbable, that this inconsistent and anomalous doctrine in Coke, was super-induced, chiefly, if not altogether, by the literal and absurd interpretation which had once been given to a statute .of 32 H. 8, which declared that, “ no prohibition, God’s law except, shall impeach any marriage without the Levitical degrees.” The courts having, at first, construed this statute to mean (what it was never intended to mean,) that all marriages, except such -as were within the Levitical degrees, were good and valid-, necessarily concluded that an idiot might lawfully marry. But this unreasonable doctrine has been supplanted by one that is more just and rational, and which is altogether consistent with the harmony and dignity of the law as a whole and as a science. Marriage is now deemed, in all respects, a civil union, depending on contract, express or implied, and requiring the exercise of reason. Thus it is said of a woman claiming dower, u she must have been the wife of a person who, at the time of the marriage, was of sound mind, as a man of unsound mind is incapable of contracting, although in the time of Lord Coke the law was held otherwise.” Clancy on Rights, 197. According to the civil law, the marriage of a person of unsound mind was, like other verbal agreements, void; and such, too, is the modern doctrine of the common law. 1 Black. Com. 438. 1 Roll. Abr. 357. Wight- *105 man vs. Wightman, 4 Johnson's Chy. Reps. 343. As a necessary deduction, courtesy and dower must fail when there had been no marriage. 1 Vern. 10. Plowden, 263, b. Law Library, No. 5, 288, and Clancy, supra.
Where a claim or defence depends upon the question, whether a person was of sound or unsound mind, at the time of his marriage, it is not necessary thatthereshould have been a decree of nullification in his life time: the question may be made and decided in a suit for dower, for distribution, or the like.
We do not deem it necessary to the destruction of a claim to dower, asserted in consequence of an alleged marriage with a man destitute of reason, that there should be a decree of nullification in his life time. For his heirs and distributees may incidentally impeach the marriage, and have its validity and effect judicially settled, in a suit in chancery for dower or for distribution, whenever any claim is asserted to any portion of his estate in virtue of an alleged marriage witli him.
Unless the woman claiming dower had been the wife of the man in whose estate she claims it, she cannot be entitled to it. She could not have been his wife, unless, during their cohabitation, hé had made with her a contract of marriage in presentí. Unless he had reason, or in other words, a sound mind, it was impossible for him to have made such a contract. His incapacity may be asserted by his heirs and distributees, in consequence of their privity ; and whenever the fact is satisfactorily established, in an appropriate mode, and in the proper form, all claim to dower must necessarily fail.
A suit in chancery for dower, or for partition or distribution, presents a fit and proper occasion for trying the existence, or non-existence, of an alleged marriage with the person whose estate is the subject matter of the suit.
Wherefore, it is the opinion of this court, on the facts as exhibited by the record, that the circuit court did not err in disregarding the claim of Anne Jenkins to dower in the estate of Jonathan Jenkins, and consequently the decree of that' court must be affirmed.