DONNELLY
*vs*
DONNELLY'S
HEIRS.

---

## Donnelly *vs* Donnelly's Heirs.

### ERROR TO THE TODD CIRCUIT.

*Marriage. Dower. Limitation. Fraud.*

JUDGE BRECK delivered the opinion of the Court.

In 1838, Thomas Donnelly died intestate, in the county of Todd, possessed of considerable estate in lands, slaves and personalty. Jane Donnelly and five children, claimed to be his widow and only heirs. Administration was granted upon his estate, and commissioners appointed for that purpose, allotted to the widow dower and divided the residue of the real estate among the children. This allotment and division were made in 1839.

In 1841, this bill was filed, the complainants alledging that they were the children and grand children of Thomas Donnelly by a previous marriage with Marga-

CHANCERY.

*Case* 30.

*December* 24.

Case stated.

ret Kimmel, in the State of Maryland, about the year 1793. That his first wife was living at the time of the second pretended marriage, if such marriage was ever contracted, and that it was, therefore, null and void; and that the pretended widow and heirs, who had obtained possession of the estate, were entitled to no portion thereof.

The administrator, widow and heirs, were made defendants, and in their answers deny all the material allegations in the bill, and insist and rely that the marriage between the said Jane and said Donnelly was legal and valid. The said Jane also made her answer a cross bill against the complainants and her co-defendants, in which she insists upon her claim as the widow of the deceased, but contends if it should turn out that she was not entitled to a share of the estate in that character, that she was entitled to it, or a portion of it, as surviving partner. She alledges that she had, at the time of her marriage, a valuable estate in land and personalty, which was taken by the deceased and sold, and which formed the basis of the large estate which had been accumulated by their joint industry and economy. She insists if she cannot claim as widow or partner, that she is, nevertheless, entitled to the estate or its value, which she surrendered to her supposed lawful husband, and if in this view her claim could not be sustained, then she claims compensation for her services in acquiring the estate. The complainants deny the allegations of this cross bill, and a part rely in bar of this claim set up, upon the statute of limitations.

The Circuit Judge was of opinion that the first marriage was established by the testimony and was valid, and that the second was void, but that the children of the second marriage were, nevertheless, entitled to share in the estate as heirs. He accordingly directed the estate to be divided into nine parts, there being four children by the first marriage and five by the second, and decreed a share to each of those who were living and to the issue of one who had died; and as one of the children by the first wife had died since the institution of this suit, intestate and without issue, his ninth

*The answer of defendants made a cross bill.*

*Decree of the Circuit Court.*

part was decreed to be equally divided between the other two surviving children of that marriage, and the issue of one who had died previously. The Court was also of opinion that the said Jane, claiming to be the widow, was not entitled to dower; and that "the statute of limitations was a bar to the relief which would otherwise be decreed her." He, however, decreed that she should not be held responsible for the rent of a mill estate which had been allotted to her as dower, and which she had held up to the rendition of the decree, nor for a claim of about $100, which the administrator held upon her for negro hire.

The said Jane alone complains of the decree and has appealed to this Court.

Whether the first marriage is established by the evidence and whether the complainants are the issue of that marriage, presents the first enquiry.

It very satisfactorily appears that about the year 1793, Thomas Donnelly was a clerk in a hardware store of Anthony Kimmel, in the city of Baltimore, and that about that period he eloped with Margaret, the daughter of Kimmel, and after a few days that they returned and reported that they were married. That they cohabited and recognized each other as man and wife, and were so recognized by their respective families, friends and acquaintances. That they resided in Baltimore and the neighborhood for about ten years, during which time they had some children, three of whom and the issue of the fourth, are shown to be the complainants in this suit. That about 1803-4, Donnelly becoming somewhat dissipated and embarrassed, and probably from some family difficulties, left his wife and children and came to Logan county, Kentucky, where he remained till 1815, when he returned to Baltimore with a drove of horses—had an interview with his wife, saw and recognized his children, and after remaining a few weeks returned again to Kentucky. It also appears that while in Kentucky in 1810, he stated that he had. married the daughter of Kimmel, who was then living in Baltimore, and that he was married in Alexandria.

DONNELLY
*vs*
DONNELLY'S
HEIRS.

Cohabitation and
the recognition
of the parties as
man and wife, is
competent evi-
dence to estab-
lish marriage in
a civil suit.

In same year he writes to a friend in Baltimore, that he had written to his wife. In this letter he expressly recognizes her as his wife. Again, in 1822, he writes to one of the complainants as his daughter, styles himself her father, and at same time forwards a release as to all property he might claim in virtue of his marriage with Margaret Donnelly or Kimmel. But without pursuing the enquiry further as to the testimony upon this point, it is sufficient to say, that the first marriage is conclusively established so far as it can be done by proof of cohabitation and recognition, and the doctrine is well settled that such testimony is competent to prove a marriage in a civil suit or in a controversy of this kind.

The testimony is equally conclusive that the complainants were the issue of that marriage.

Shortly after Donnelly visited Maryland and returned to Kentucky, in 1815, it appears that he married Jane Phelps, at that time a widow, and since claiming to be his widow. She relies upon a marriage in fact, and exhibits as evidence thereof, a duly authenticated copy from the records of the Court of Robertson county, in the State of Tennessee, of a license, and the return thereon by a Justice of the Peace, to whom it was directed, that in virtue thereof, the marriage had been solemnized.

In 1821, Margaret Donnelly, the Maryland wife, died. The marriage of Mrs. Phelps being in the life time of the first wife, was therefore, absolutely null and void. It was void at the common law and not a marriage either *de jure* or *de facto*; (2 *Kent's Commentaries*, 79–80; *Croke Elizabeth*, 858;) *Williamson* vs *Parisian*, (1 *Johnson's Chy. Rep.* 389;) *Fenton* vs *Reed*, (4 *Johnson's Rep.* 52.)

A marriage by a
man who has a
wife living, is
null and void ab-
solutely, and in
virtue of such
marriage the se-
cond wife ac-
quires no claim
to dower, as she
is not a lawful
wife; (*Roper on
Husband and
wife*, 333;
*Dana*, 105.)

In virtue of the marriage, therefore, in 1817, the defendant did not become the lawful wife of Donnelly, and consequently, by reason of that marriage, was not entitled to dower in his estate. To entitle a woman to dower, she must answer the description of a lawful wife: (*Roper on husband and wife*, 333;) *Jenkins* vs *Jenkins' heirs*, (2 *Dana*, 105.)

But it is contended that the testimony is sufficient to establish marriage between the parties, after the death of the first wife. On the other hand, it is urged that no such marriage is relied on; and it is true there is no express allegation of any actual marriage, except in 1817. But the defendant avers that she was the lawful wife of Donnelly, and so continued till his death, and is entitled to dower as his widow. The complainants alledge that said Donnelly was never at any time lawfully married to the defendant, and therefore, that she was not entitled to dower. This allegation is expressly denied. The issue is thus, in effect, made up, whether the defendant was or not at the death of Donnelly, his lawful wife. If the testimony is sufficient to establish the fact that she was, the failure to aver a marriage at a time when it would have been lawful, or the reliance upon and proof of one when it was not, ought not to deprive her of the relief to which such testimony would otherwise entitle her.

The complainants also virtually alledge that Donnelly and the defendant lived together in a state of concubinage. That allegation she also positively denies, and the fact, so far as she was concerned, is not established. On the contrary, it may be assumed that she had no knowledge of the existance of a former wife at the time of the marriage in 1817. The former marriage had taken place about twenty five years previous, in a distant State, and fifteen years had elapsed since Donnelly had abandoned his family and been living in Kentucky, from five to seven hundred miles from their residence. The intercourse, therefore, prior to the death of the first wife, was not, on the part of the defendant, meretricious, and ought not to prejudice her claim to protection and relief. She believed herself to be a lawful wife.

Let us now examine the testimony in support of a marriage when there was no impediment to that relation between the parties.

It appears that after the death of the Maryland wife, they lived together and cohabited as man and wife, recognized that relation as subsisting between them, with the general reputation and understanding that they

*A man having a wife in Maryland married in Ky. in 1817, subsequently the wife in Maryland died, and he continued to live & cohabit with the wife in Ky. and recognize her as such until 1838, when he died— Held that the Court will presume a marriage in fact after the death of the Maryland wife, and give dower to the last wife; (2 Kent, 87; 3 Marsh. 369.)*

were such, for near twenty years. During all that period the proof is, that the conduct of defendant was that of a faithful, prudent, industrious and economical wife. They moreover, raised a family of children which were recognized as legitimate, and at the death of the father, were held by the Court of the county where they had been born and raised, to be his lawful heirs and entitled to his estate, and their mother as his lawful wife, to be entitled to dower.

These facts authorize, we think, the presumption of a marriage after the death of the first wife, and justify the conclusion that the defendant was the lawful wife of Donnelly at his death.

In support of this view of the case, we have an authority directly in point, in *Fenton* vs *Reed, supra.* That case was decided by the Supreme Court of New York, where marriage, as in Kentucky, is deemed a civil contract merely, and resting upon the principles of the common law; (*Kent's Commentaries*, 2d *vol.* 87;) *Dumarsley* vs *Fishley*, (3 *Marshall*, 369;) *Jenkins* vs *Jenkins' heirs, supra.*

In *Fenton* vs *Reed* the plaintiff married a second husband in the absence of the first in foreign parts, and when reported to be dead, but shortly after the marriage of his wife he returned, and died a few years afterwards. The plaintiff continued to live with her second husband till his death, which happened six years after the death of the first. She claimed to be the lawful wife of the second husband.

The Court held the second marriage during the life of the first husband null and void, but that the facts that the parties cohabited together as husband and wife, and under the reputation and understanding that they were such from the death of the first husband, and that during this time the wife sustained a good character in society, authorized the presumption of a marriage after the death of the first husband. And these were pronounced strong circumstances in favor of the presumption. The Court say that proof of an actual marriage was not necessary; that no formal solemnization of marriage was requisite. In the case before us, the parties cohab-

ited as husband and wife, mutually recognizing that relation as subsisting between them, with the reputation and understanding that they were husband and wife, and with good character, not for six, but for seventeen years, and during which time there was no impediment to a lawful marriage between them.

But if we should be mistaken in this view of the case, and it should even be conceded that the facts and circumstances do not authorize the presumption of the marriage after the death of the first wife, and consequently that the defendant would not be entitled to dower, still we think she established an equitable claim to relief, equal at least to the value of a dower estate. She shows most satisfactorily, that her own means, property obtained from her by Donnelly, and her industry and economy, contributed largely in the acquisition of the estate, of which he died possessed.  It appears that he received from her from $800 to $1,000, or property to that amount.  She surrendered it to him . upon the supposition that he was her lawful husband, and so far as appears, labored under that impression till his death.  Under such circumstances, the statute of limitations relied upon by the guardian *ad litem* for several of the complainants, who were infants, has no application whatever to the case.  She was defrauded of her estate, and the fact has but recently come to her knowledge.  Donnelly, so far from being able to rely upon it, would be estopped to deny that she was his lawful wife.  The complainants find her in possession, by judgment of law, of an estate, which she claimed as the lawful wife of their ancestor, a relation which he was estopped to deny.  And it may be questioned whether the complainants, in reference to the rights of the defendant, should not be regarded as occupying the attitude of their ancestor.  That they cannot render available the lapse of time, there can, in our opinion, be no doubt.

The defendant, whether ever the lawful wife of Donnelly or not, has, in our opinion, an equitable claim at least equal to the dower estate, which has been alotted her, and as she is satisfied with that, the Court be-

DONNELLY
*vs*
DONNELLY'S
HEIRS.

The statute of limitation does not commence to run against a claim for an injury growing out of a fraud, until the fraud is discovered.

low erred in disturbing her in the possession and enjoyment of it.

The decree is therefore reversed, and the cause remanded for further proceedings and decree, consistent with this opinion.

*G. W. Ewing* for plaintiff; *J. & W. L. Harlan* for defendants.