Brinkerhoff, C.J.
This is a bill in chancery filed in the common pleas of Clark county on the 26th day of June, 1852. In his bill the complainant, Longworth, states, in substance :
That on the 1st day of December, 1820, John H. Piatt and James Findlay being the owners, in common, of sections 3, 4, 5 and 6, town. 4, range 10, the first three fractional sections east of Mad river, and entire sections 28, 34 and 36, between the Miami rivers, containing in the aggregate, agreeable to •the returns made to the land office, four thousand four hundred and fifty-eight acres of land, said Piatt and wife, on that day, gave to Thomas D. Carneal a mortgage on his undivided *195 half of said lands to secure the payment of $7080, according to the conditions of said mortgage.
That on the 29th day of August, 1821, said Piatt and Findley made an amicable partition of said lands, by deeds of mutual quitclaim, by which the southern part of said lands, particularly described in the bill, and amounting in all to some 2289xro acres, including section 4, range 10, and sections 28 and 34, town. 5, range 10, were set off and assigned to said Piatt.
That, after said division, on the 3rd of October, 1821, John H. Piatt sold and conveyed to Benjamin Y. Hunt, 1216 acres of said land, to be taken from the south side of that part of .section 4, town. 4, range 10, lying east of Mad river, and sec tions number 34 and 28, in town. 5, range 10. Said 1216 acres to be laid off by a line parallel with the southern boundary of said sections, beginning at Mad river, and extending to the east line of section 28.
That on the 12th of February, 1822, John H. Piatt died, leaving the amount intended to be secured by said mortgage wholly unpaid; and Benjamin M. Piatt and the complainant, Nicholas Longworth, were appointed his administrators.
That Benjamin Y. Hunt, some time prior to the 7th day of April, 1828, undertook to survey off the 1216 acres conveyed to him by John H. Piatt, as aforesaid, and, in so doing, ran his north line so far north as to include 1523 and 96-100 acres, being a surplus of 307 and 96-100 acres over and above the 1216 acres, to which, by his deed from John S. Piatt, he was entitled, and took and retained possession thereof thenceforward.
That on the 5th of June, 1827, Carneal instituted proceedings by scire facias, on his mortgage, against the administrators and heirs of John H. Piatt, in the common pleas of Clark county, and, an order of sale having been obtained, the sheriff returned that he had levied on 621J acres of land, describing the same by courses and distances, and other distinct boundari '-s, which show that it embraced the northern portion of the tract set off to John H. Piatt, in the partition between him and Findley, and all that remained of the same which was not included in the erroneous survey of Benjamin Y. Hunt,
*196 That on the 12th of August, 1828, the 621acres were sold by the sheriff to one Edward W. Davis, for $1148; and leaving several thousand dollars due and unpaid on the mortgage, and that said Davis afterward sold and conveyed the same 621^ acres to the complainant, Longworth, who, subsequently, on the 18th of September, 1828, sold and conveyed the same to Henry H. Hunt, James M. Hunt and Julia F. Hunt, with full covenants of warranty; and that James M. Hunt, subsequently, and prior to the 15th day of May, 1843, bought out the interests of Henry H. and Julia F. Hunt in said 621-| acres, and thereby became the sole owner thereof.
That about the time complainant purchased the 621-| acres of land from Davis, he also purchased from Carneal his interest in the unsatisfied mortgage and judgment thereon.
That the reason why the'sheriff had levied on and sold the 621J acres only, was the ignorance of the sheriff, of Carneal, of the complainant, of Piatt’s heirs, and of all parties in interest, except Benjamin Y. Hunt, of the fact that the latter, in his pretended survey of the Í216 acres bought by him from Piatt, had included a surplus quantity of 307 acres.
That, in the year 1843, James M. Hunt being thus the owner of the 621J acres off the north end of the original tract set off to Piatt; and Benjamin Y. Hunt being the owner of 1216 acres off the south end, and a surplus of 307 acres in possession of Benjamin Y. Hunt under his erroneous survey, lying between them; which surplus was really subject to complainant’s mortgage ; but of the existence of which surplus complainant and Piatt’s heirs were alike ignorant; and a knowledge of which was by said Benjamin Y. Hunt fraudulently concealed from complainant — the said James M. Hunt, having become aware of the existence of said surplus of 307 acres, for the purpose of defrauding complainant, called on him, and, suppressing the fact, then unknown to complainant, of there being such surplus, and fraudulently represented to complainant that one McCord had a claim to a part of said 621J¡ acres; that McCord had brought suit against him, Hunt, and others for the same; and that complainant would be liable over to him on his covenants of warranty; and further *197 fraudulently represented that there was a small strip of land on the south side of said 621J acres, estimated to contain about fifty acres, which was still liable to said mortgage and judgment, and which, he thought, would, in whole or in part, cover the amount of land claimed by McCord; and then proposed to release complainant from his covenants of warranty, provided complainant would release and transfer to him, Hunt,' said judgment and mortgage ; to which complainant assented; and accordingly did release and transfer to said Hunt the judgment and mortgage, so far as they affected the lands described in said instrument of release and transfer, and which was so described as to embrace the whole of said surplus of 307 acres.
That said claim of McCord was groundless and wholly failed, and his suit, which was by a bill in chancery, was subsequently, by the supreme court of Clark county, dismissed .at his costs.
That thereupon the said James M. Hunt and Benjamin Y. Hunt, availing themselves of their fraudulent practices, proceeded, about the 8th of May, 1844, to divide said surplus of 307 acres between them, by mutual deeds of quitclaim, James M. Hunt taking the north half, and Benjamin Y. Hunt the south half thereof; and that BenjaminY. Hunt has since died.
The bill makes James M. Hunt, the heirs of John H. Piatt, the heirs of Benjamin Y. Hunt, and certain purchasers from the Hunts, parties defendant, and prays that his release and transfer of the judgment and mortgage may be set aside and held for nought; that said 307 acres may be sold, and the proceeds applied to the payment of the unpaid balance due on his judgment and mortgage, and for general relief.
The heirs of John H. Piatt answer, admitting and averring generally the facts stated in the bill, and averring also that they, being entirely ignorant of the existence of said surplus of 307 acres of land, were also induced by acts of fraudulent concealment and misrepresentation, on -the part of James M. Hunt, similar to those charged in the 'bill to have been practiced upon the complainant, to execute releases to said Hunt *198 for said 621} acres, by a description of boundaries which will include the said strip of 307 acres also. They also aver that Benjamin Y. Hunt, at the time he undertook to survey the tract of 1216 acres which had been sold to him, acted therein, not only for himself, but also in their behalf, and as their agent; and that, by including within his survey the said strip-of 307 acres, and by concealing the existence of such strip of land from them, he was guilty of a fraud on them, while he was thus acting in a fiduciary capacity. And having made these allegations by way of cross bill, they also pray that, by reason of the frauds alleged to have been practiced by the Hunts, the release and transfer of the judgment and mortgage by complainant to James M. Hunt, may be set aside, and that their rights generally, in the premises may be protected.
James M. Hunt answers, denying generally and specifically, all the fraudulent acts and concealment charged against him, and setting up a continuous and uninterrupted adverse possession of the strip of 307 acres, in himself and Benjamin Y. Hunt, for more than twenty-one years, to-wit: from 1827 to 1852, when this suit was commenced. He also answers to-the answer and allegations by way of cross bill, contained in the answer of Piatt’s heirs, in which he states that, after the assignment of the judgment and mortgage to him by the complainant, the judgment having become dormant by lapse of time, he caused the same to be revived by a proceeding in the common pleas of Clark county; that execution issued thereon, and was levied on the strip of 307 acres (describing it), and the same was regularly appraised, advertised, and, on the 3d day of August, 1846, sold; and that he, James M. Hunt, became the purchaser thereof; which sale was afterward confirmed by the court, and a deed therefor made to him by the sheriff.
Benjamin Y. Hunt being dead, his heirs also answer, denying all fraud on the part of Benjamin Y., and James M. Hunt, and also claiming the benefit of a continuous, uninterrupted, and adverse possession for more than twenty-one years prior to the commencement' of this suit.
Other persons, purchasers, mediately or immediately from- *199 the Hunts, are also made parties, but whom, with their claims, it is not necessary to notice particularly in the report of the case.
This condensed statement of the allegations and claims of the parties, as contained in the pleadings, will give an outline idea of the facts of the case, sufficiently accurate to present the questions involved.
The first and most prominent question, it will be seen, is one of fact. Were Benjamin Y., and James M. Hunt, guilty of the fraudulent concealments, and fraudulent acts and misrepresentations with which they are charged ?
The exhibits and testimony in the case are very voluminous. To go into a detailed statement of them, and of the reasons drawn from them, on which the court has arrived at its conclusions on this question of fact, would be alike tedious and unprofitable. Suffice it, therefore, to say, that as the charges against James M. Hunt, and Benjamin Y. Hunt, are of a grave character; and as they are now both dead, we have felt it to be due, alike to them and to justice, to give to the evidence a minute examination and a careful consideration. This we have done; and by it we are compelled to the conclusion, that the charges of fraud which the pleadings contain, are established in proof.
This conclusion of fact gives the case to the complainant, unless the defendants are protected by the lapse of time.
It is admitted on all hands, and, indeed, is expressly stated in the bill, that from the year 1827 or 1828, until 1845, a period of eighteen or nineteen years, when James M. and Benjamin Y. Hunt, divided the 307 acre strip between them, Benjamin Y. Hunt was in possession of it claiming title. From thence until the commencement of this suit in 1852, about seven years more, James M. and Benjamin Y. Hunt were each in possession of half of it, under claim of title; making in all some twenty-four or twenty-five years. But, in 1845, and before the bar of the statute of limitations had become perfect in favor of any one, James M. Hunt obtained the title of the complainant and of Piatf s heirs, mortgagor, and mortgagee, by fraud. As against this title, and in his *200 favor, then the lapse of time, as applied in equity, in analogy to the statute of limitations, would begin to run only after the discovery of the fraud; for then only does the laches of the party seeking relief begin. 2 Story’s Eq. sec. 1521 and 1521a; Angel on L., sec. 183, 470, 471. First Mass. Turnpike v. Field, 3 Mass. R. 201; Welles v. Fish, 3 Pick. 74; Donnelly v. Donnelly, 8 B. Mon. 113. 1 Story’s Eq. J. sec. 315, 316. He obtained his release from complainant and Piatt’s heirs in 1843; this suit was commenced in 1852. How soon after the making of these releases the fraud was discovered by the complainant, and the heirs of Piatt, does not distinctly appear; but, at most, it could not have exceeded the nine years which elapsed between 1843 and 1852. Probably it was much less than that length of time; and we know of no rule of equity, which, under the circumstances of this case, would require us to hold the parties seeking relief to be barred of their remedy, even had the whole nine years elapsed, before suit, after the discovery of the fraud.
This disposes of the case as to James M. Hunt. But how is it as to Benjamin Y. Hunt? When he caused the survey to be made, by which it was intended to set off to him the 1216 acres, which he had purchased from Piatt, but which, either through fraud or mistake, included a surplus of 307 acres, the complainant, Longworth, was the administrator of Piatt’s estate. It is true, Longworth afterward purchased the 621-J- acres, not embraced in that survey, and sold under the judgment in seire facias upon the mortgage, and also the judgment itself. But, at the time of this survey, he had no concern with, or interest in, this land whatsoever, except as the representative of Piatt’s estate. And it is charged in the answer and cross bill of Piatt’s heirs, and is fully proved by his own deposition, taken in the case of McCord v. Hunt, et al., in the common pleas of Clark county, and before referred to, that, when Benjamin V. Hunt procured this survey to be made, he was acting, not only for himself, but also as an agent for Piatt’s estate. He did it at Longworth’s request ; he returnéd to Longworth a plat of the survey; and Longworth, as administrator of Piatt’s estate, paid a share *201 -of the expense — Longworth and Piatt’s heirs, living at a distance from the land, and Benjamin V. Hunt living upon or very near it. Whether, when he made that survey, and in-■eluded within it the surplus of 307 acres, he did so knowingly and designedly, and in fraud of the mortgagee and of Piatt’s heirs, the testimony does not disclose; but the legal presumption is, that he did not, and such is the judgment of -charity. But, be this as it may, it is quite certain, that when in 1846, he and James M. Hunt divided and appropriated, by ■deeds of mutual quitclaim, this surplus between them, he then, at least, became aware of its existence, and of the mis take, if mistake it were, he had made in his survey, for him • .self and Piatt’s estate, some seventeen or eighteen years before. Had this survey been made for himself alone, whatever may have been the dictate of a properly sensitive con.science, we suppose he would have been under no legal obligation to make disclosure. But he tmdertook the survey for Piatt’s estate, as well as for himself. He assumed a position -of trust and confidence. And from him the law exacts the exercise of a higher morality, than from a mere stranger. And even though the surplus was included in his survey by innocent mistake on his part, when he did discover, he was bound to disclose the mistake. Had he done so, the rights • of the complainant, and of Piatt’s heirs, would have been unaffected by lapse of time; and his failure to do so, was, in •our opinion, such an act of fraud as ought to prevent a court of equity from giving him the benefit of any lapse of time accruing prior to its discovery.
In cases of which courts of equity, and courts of law, have concurrent jurisdiction, the former act in obedience to statutes ■of limitation; but in cases of which equity has exclusive jurisdiction, they act only in analogy to them. This case is of the latter kind; for, the bar of the statute being complete at law, a court of equity, alone, can give relief. The statute of limitations does not, in terms, apply to this proceeding; -and we are, therefore, left to the exercise of a sound legal -discretion as to whether or not we will hold a lapse of time; *202 correspondent to the time constituting a statutory bar at law, to be a bar to this proceeding.
An attempt of Benjamin Y. Hunt to set up the lapse of time in defense to the claim of Piatt’s heirs, in view of the relation which he sustained to them when the survey was-made, would be most unconscionable; and, being at liberty to close our ears against it, we are unwilling to listen to it when it comes from those who represent him.
The mortgage made by Piatt to Oarneal, being upon the whole tract of land originally owned by Piatt, subsequent to his partition with Findley, and being of a date prior to his sale of the 1216 acres to Benjamin Y. Hunt, a query may arise as to why the mortgage does not hold good against the whole tract, including the 1216 acres sold to Benjamin Y. Hunt, as well as the surplus strip of 307 acres; and hence as to the necessity of this proceeding. The reason is found in the fact that the mortgage, though of prior date, was not recorded until after the recording of the conveyance of the 1216 acres to Benjamin V. Hunt.
We are of the opinion that a decree should be entered setting aside the releases and transfers by the complainant and by Piatt’s heirs to James M. Hunt, and also the conveyance by the sheriff to him, under the sale upon execution, as to the surplus strip of 307 acres, and vesting the title thereto in Piatt’s heirs, subject to the complainant’s mortgage, except in so far as the same may have been sold and disposed of by James M. and Benjamin Y. Hunt, or those holding through either of them, prior to the establishment of a Us pendens herein; and that, as to the portions thus sold and disposed of, the case should be referred to a piaster, to take an account,, on just principles, of the value of such portion, with a view to a further decree against their representatives.
Scott, Sutliee, Peck and Gtholson, JJ., concurred.