<hr/>

MATTIE WILSON v. BOB WILSON.

[51 South. 453.]

1. MARRIAGE. *Insanity. Effect. Divorce. Knowledge. Evidence. Code*
   1906, *section* 1669, *paragraph* 8.

   While under the common law an insane person could not contract
   marriage, such contract being considered void because of the
   inability of the party to assent thereto, and therefore could be
   annulled, this law has been changed by our statute, Code 1906,
   section 1669, paragraph 8, providing that "insanity or idiocy at
   the time of the marriage, if the party complaining did not know
   of such infirmity," shall be a cause for divorce.

2. SAME.

   In a suit for divorce on the ground of insanity at the time of the
   marriage, the party complaining must show that she did not know
   of such insanity when the marriage was consummated.

APPEAL from the chancery court of Lauderdale county.
HON. SAM WHITMAN, JR., Chancellor.

Suit for divorce by Mattie Wilson against Bob Wilson.
From a decree dismissing her bill complainant appeals.

The facts are fully stated in the opinion of the court.

*W. I. Munn,* for appellant.

In the case of *William Smith* v. *Molly Smith,* reported
in 47 Miss. 211, it was held that either insanity or idiocy

at the time of the marriage was a ground for divorce, if complainant was ignorant of such; the court further said in this case that occasional spells of insanity before marriage, and ultimate permanent insanity several years after marriage, together with evidence of hereditary taint in the family of defendant do not warrant a divorce. Under the reason given by Mr. Simrall who rendered the opinion of the case of *Smith* v. *Smith, supra,* then this court should hold that the defendant was either insane or an idiot at the time of the marriage and it would then follow that the appellant would be entitled to a decree on the ground of habitual drunkenness, which is proven beyond a reasonable doubt and also on the ground of cruel treatment.

In the case of *Mosely* et al v. *Larson,* 86 Miss. 288, 38 So. 234, Cox, Special Judge, said: "We cannot assent to the proposition that alimony cannot be allowed because the separation of appellee and her husband, John Larson, was induced by the insanity of the latter, and without fault on his part. It was likewise without fault on part of the wife. The insanity of the husband cannot absolve him or his estate from the duty of maintaining the wife; and a bill in chancery for alimony is always an appropriate remedy to secure to the wife this right, as against her husband and his estate, when, without fault on her part, she is left by her husband without provision for her support. *Garland* v. *Garland,* 50 Miss. 694; *Scott v. Scott,* 73 Miss. 575, 19 So. 589; 1 Bishop's Mar. Div. & Sepr., pars. 1253-1259. Insanity of defendant is no bar to suit for divorce. 2 Bishop's Mar. Div. & Sepr., pars. 516, 518, 522. We see no valid reason why it should bar a suit for alimony.

Admitting for the sake of argument that appellee was crazy at the time of the marriage and that appellant knew of such insanity, we think that if the other grounds for divorce as set forth in the bill of complaint had been substantially proven, or any one of them, then appellant

would be entitled to relief, notwithstanding the fact that appellee was non compos mentis.

REED, J., delivered the opinion of the court.

This is a suit for divorce, brought by appellant against appellee. One of the grounds alleged in the bill of complaint is that appellee was an idiot or insane person at the time of the marriage, and that appellant did not know of such infirmity. It is provided in section 1669, par. 8, Code of 1906, that "insanity or idiocy at the time of the marriage, if the party complaining did not know of such infirmity," shall be a cause for divorce.

This case turns upon the question of appellant's knowledge of appellee's mental condition at the time of the marriage. She testifies that she had only seen him twice before the marriage, and that she had no knowledge then of his insanity or defective mental condition. The father of appellee testified that he told appellant before the marriage that his son had been thrown by a mule several years prior to that time, and that he had been a "little off" ever since, and that he was afraid his son could not make her a living. He also states that he did what he could to prevent the marriage, and that appellant, when he gave her the information, said that appellee had sense. He was asked whether he had told appellant that his son was crazy, and he answered as follows: "No; I did not tell her he was crazy, but I told her was off at times; that he was kind of foolish at times; that I was afraid he could not work and make her a living; that a mule threw him, and that he kind of had spells some times." Appellee's mother testified that she told appellant, before the marriage, that her son was "kind of off."

It appears from the testimony of the official performing the ceremony, as well as from the testimony of the mother and father of appellee, that no objection was made to the marriage at the time of its celebration. The parties were married in 1903, and lived together until 1909, when ap-

pellee was adjudged a lunatic, and has since been confined in the East Mississippi Insane Asylum at Meridian. The testimony shows that appellee was of unsound mind at the time of the marriage. The chancellor denied the divorce and dismissed the bill.

A review of the testimony leads us to the conclusion that he was in error. We do not believe that it has been shown that appellant, the party complaining in this case, knew of the insanity, the infirmity with which appellee was afflicted, at the time of the marriage. She testified that she did not know of it, and it will be noted that the testimony for the defense does not show that she was informed before the marriage that appellee was insane or crazy. The substance of the testimony of appellee's parents is to the effect that they considered him somewhat "foolish or off at times." They do not say they clearly and definitely informed her that their son was insane.

At common law an insane person could not contract marriage. Such contract was considered void because of the inability of the party to assent thereto, and therefore could be annulled. The law, however, has been changed in this state by statute, so that, if the insanity was known at the time of the marriage, it could not be availed of in a suit for divorce. Therefore, under the present law of this state, if appellant knew of appellee's insanity when she married him, then she accepted the situation, and her complaint of his infirmity will not be sufficient to entitle her to a divorce. However, the appellant in this case most emphatically denied that she had such knowledge when the marriage took place, and the proof is not sufficient to establish that she was then informed of appellee's insanity.

We believe that the divorce should have been granted, and we therefore reverse the decision of the chancery court, and enter a decree here granting the divorce prayed for.

*Reversed.*