ELLIS *v.* ELLIS.*

(Division B.   Dec. 17, 1928.   Suggestion of Error Overruled Jan. 21, 1929.)

[119 So. 304.   No. 27448.]

*Corpus Juris-Cyc References: Marriage, 38CJ, section 2, p. 1275, n. 17; section 100, p. 1325, n. 70; section 126, p. 1352, n. 91; section 129, p. 1354, n. 14; On the question as to whether marriage of mental incompetent is void or voidable only, see annotation in L. R. A. 1916C, 700; 18 R. C. L. 447; 3 R. C. L. Supp. 814; 4 R. C. L. Supp. 1187.

*Powell, Harper & Jiggitts,* for appellant.

*Teat & Cox,* for appellee.

Argued orally by *A. Y. Harper,* for appellant, and *J. A. Teat,* for appellee.

PACK, J. Appellant filed a bill in the chancery court, alleging, substantially, that he is the surviving brother of George B. Ellis, deceased, who, in his lifetime, is alleged to have intermarried with Miss Lottie Simmons, appellee, here; that said marriage was void *ab initio,* for the reason that the said decedent was insane at the date of said marriage, and that but for said alleged marriage of decedent with appellee this appellant would have inherited the property of decedent.

The bill further alleges that no valid marriage was ever consummated between the said George B. Ellis and ap-

pellee, but that another man, representing himself to be the said George B. Ellis, was substituted and went through the form of a marriage ceremony with appellee, so that appellee might thereafter claim to be the wife of decedent and inherit his property, and that decedent never lived with, or held appellee out as, his wife. The prayer of the bill was to annul the marriage.

Appellee answered the bill, and, under the new Chancery Practice Act, challenged the sufficiency of the bill by demurrer. The principal points raised by the demurrer are: First, whether a relative can make a collateral attack upon the marriage after the death of one of the spouses; and second, whether the bill states sufficient facts to warrant the court in rendering any relief whatever.

The chancellor sustained the demurrer, and dismissed the bill.

This record presents a novel case. The surviving brother seeks to annul a marriage entered into by his brother, now deceased, because of insanity of the deceased brother at the time of the marriage. It is contended by appellant that George B. Ellis, being insane at the time of the alleged marriage, was incapable of consenting to a valid marriage, and, because of such mental incapacity, the purported marriage was a nullity, and, being void, the same may be attacked any time, whether during the life of the parties or after the death of either of them. In the absence of any statute to the contrary, the weight of authority seems to uphold this contention. Marriage, however, is fully under public regulation, and the state, under proper legislation, may declare what marriages between its own citizens shall be void and those that are merely voidable. In L. R. A. 1916C, p. 702, there is a full annotation of authorities. It is there stated that: "In some jurisdictions the marriage of a person of unsound mind is declared void by

express statutory provision. But the majority of statutes which deal with marriages of mental incompetents, either expressly or in effect render such marriages voidable only, and not void *ab initio*. Thus, where the statutes expressly declare some marriages absolutely void, and then enumerate others, including that of an insane person, which may be annulled, marriages falling within the latter class are voidable only." See, also, *Mackey* v. *Peters*, 22 App. D. C. 341; *Wiser* v. *Lockwood*, 42 Vt. 720.

We think it may be stated, as the general rule, that "a voidable marriage is valid for all purposes until avoided or annulled, and it cannot be attacked collaterally, but only in a direct proceeding during the lifetime of the parties. Hence, on the death of either, the marriage cannot be impeached, and is made good *ab initio*." 18 R. C. L. 447, section 77; 2 Schoula on Marriage and Divorce (6 Ed.), p. 1372.

A case similar to the case at bar was *In re Gregorson*, decided by the supreme court of California, 160 Cal. 21, 116 P. 60, L. R. A. 1916C, 697, Ann. Cas. 1912D, 1124, in which the court held, in part, that:

"If the parties who are alone recognized by the statutes as entitled to have the marriage annulled do not, during its existence, see fit to avoid it, a stranger to the marriage should not be permitted to question its validity in a collateral proceeding." *Guthery* v. *Wetzel*, 205 Mo. App. 664, 226 S. W. 626.

Looking to the statutes and decisions of our own state, we find that, prior to the Code of 1857, the subject of insanity as a ground for divorce was dealt with as at common law. At common law the rule was that a marriage with an insane person was wholly void, because of inability to assent. It was under this rule that *Ward* v. *Dulaney*, 23 Miss. 414, was decided. Since the adoption of the Code of 1857 neither insanity nor idiocy, at the time of the marriage, has been a ground for divorce in this

state, unless the party complaining did not know of such infirmity. *Smith* v. *Smith,* 47 Miss. 211; *Wilson* v. *Wilson,* 104 Miss. 347, 61 So. 453. Chapter 50 Hemingway's 1927 Code, designates what shall be considered void marriages. Section 2725, Hemingway's 1927 Code (section 3242, Code of 1906), provides that marriage within certain degrees of kinship shall be incestuous and void. Likewise, section 2726, Code of 1927 (section 3243, Code of 1906), declares that certain marriages within prohibited degrees of kinship shall be void. Section 2727, Hemingway's 1927 Code (section 3244, Code of 1906), prohibits marriages between the white and negro races, and between the white and Mongolian races. All such marriages as designated in these three sections of the Code are declared to be void. The marriage in the instant case, not falling in the said statutory classification of void marriages, would be classed as a voidable marriage, and covered by the eighth paragraph of our divorce statute providing that a divorce may be granted on the ground of "insanity or idiocy at the time of the marriage if the party complaining did not know of such infirmity." During the life of the parties no such suit was filed, and, applying the general rule as heretofore set out in this opinion, no suit can be filed to nullify said marriage after the death of the parties, on the ground of insanity, as is attempted to be done in this suit, and the chancellor was not in error in so holding.

As to the second proposition advanced by the bill and challenged by the demurrer—that no marriage ceremony was ever, in fact, performed between the deceased and appellee, but that another person was substituted in lieu of George B. Ellis—we do not agree with the chancellor. We might have to go into the realm of fiction to actually find a parallel case, but, nevertheless, there is a positive charge of fact that no such marriage ever took place with the real George B. Ellis as the groom, and that

deceased in his lifetime never held appellee out as his wife. The bill, as amended, further alleges ''that the said ceremony did not in fact unite the said Lottie Simmons and the said George B. Ellis in the bonds of holy matrimony for the reason that said George B. Ellis was not the man whom the said W. G. Dorroh united in marriage on said date, but that some other person, the name of whom is to your complainant unknown, but should be known by the defendant, representing himself to be George B. Ellis at the time of the said alleged ceremony, and that the said George B. Ellis was consequently never married to the said Lottie Simmons, but that the said alleged marriage was a pretended one and null and void.'' Great as the burden will be on appellant to support this allegation, we think it charges enough to require answer and proof.

For this error alone, the judgment of the court below is reversed, and the cause remanded to be proceeded with in accordance with this opinion.

*Reversed and remanded.*