**BEDDOW et al. v. BEDDOW.**

**BEDDOW v. BEDDOW et al.**

Court of Appeals of Kentucky.
Dec. 19, 1952.

Rehearing Denied May 8, 1953.

James F. Clay, Danville, for appellant.

Jay W. Harlan, Danville, J. J. Leary, Frankfort, Joe G. Davis, Danville, for appellee.

DUNCAN, Justice.

By a proceeding in the Boyle Circuit Court, a judgment of insanity was rendered against Robert L. Beddow on January 18, 1950. Three days thereafter, Citizens National Bank of Danville, Kentucky, was appointed and qualified as Committee. Upon its appointment, the Committee took possession of Beddow's rather substantial estate.

On January 30, 1950, Beddow, then sixty-six years of age, was married to Josephine Epperson, then thirty-three years of age, in a ceremony performed in Columbus, Mississippi. At the time of the marriage, both contracting parties were residents of Boyle County, Kentucky, and had gone to Mississippi only for the purpose of marriage. On the day following the ceremony, they returned to the State and county of their residence.

On March 18, 1950, Citizens National Bank as Committee sued to have the marriage set aside. The principal contentions were that Beddow had been adjudged insane prior to his marriage and was, in fact, insane at the time of the marriage. Special and general demurrers were overruled, and on October 10, 1950, Josephine filed her answer. Therein, after denial of the material allegations of the petition, it was alleged that the judgment of insanity was "null, void, and of no effect." The validity of the marriage was asserted. Prior to the filing of the answer, Beddow and Josephine had filed a separate and independent action in the same court on July 27, 1950, which was a direct attack upon the judgment of insanity, and as a necessary concomitant, an attack upon the order appointing Citizens National Bank as Committee.

By agreement, the action of the Committee and the action of the Beddows were consolidated. The court, after hearing proof, entered a judgment on September 10, 1951, setting aside the judgment of insanity because some of the statutory steps necessary to that proceeding were not taken. Necessarily, the order appointing the Committee was set aside and the Committee was ordered to account for the Beddow property. These judgments were entered after the death of Beddow, which occurred on June 14, 1951.

On June 30, 1951, a new and separate action was begun by Thomas Beddow, brother and one of the heirs at law of Robert L. Beddow. This was an action for a declaration of rights wherein the plaintiff sought to have the Beddow marriage declared void. The petition, as frequently amended, charged that Robert L. Beddow at the time of his marriage was an idiot and a lunatic. It may be remarked parenthetically that the terms "idiot" and "lunatic" are not synonymous, but the distinction is not material here. A general demurrer was sustained to the petition as amended. Thomas Beddow refused to plead further, and the petition was dismissed. This and the previous actions are here on appeal and have been consolidated in this Court.

It will not be necessary to extend this opinion by a discussion of the judgment which sets aside the judgment of insanity. An examination of that record indicates that several of the statutory steps were not taken, any one of which would have rendered the proceeding void. The court properly set aside the judgment of insanity, and the judgment in the case of Citizens National Bank as Committee v. Josephine Epperson Beddow is affirmed.

In the action of Thomas Beddow v. Josephine Epperson Beddow, when considering the propriety of the order sustaining the demurrer, we must assume the truth of all facts properly plead in the petition. For the purpose of this appeal, we shall, therefore, consider as true the following facts:

(1) Robert L. Beddow and Josephine Epperson Beddow were residents of this State.

(2) These parties were united in marriage in a ceremony performed on January 30, 1950, in the State of Mississippi.

(3) Robert L. Beddow, at the time of his marriage was either an idiot or a lunatic.

Marriage with an idiot or lunatic is prohibited and void under the laws of Kentucky. KRS 402.020 provides that:

"Marriage is prohibited and void:

"(1) With an idiot or lunatic;

"(2) Between a white person and a Negro or mulatto;

"(3) Where there is a husband or wife living, from whom the person marrying has not been divorced;

"(4) When not solemnized or contracted in the presence of an authorized person or society;

"(5) When at the time of marriage, the male is under sixteen or the female under fourteen years of age."

■ Under the laws of Mississippi, such a marriage is voidable only. Ellis v. Ellis, 152 Miss. 836, 119 So. 304; White v. Williams, 159 Miss. 732, 132 So. 573, 76 A.L.R. 757; Parkinson v. Mills, 172 Miss. 784, 159 So. 651.

Appellee insists that under the provisions of KRS 402.040, we are required to recognize the validity of the marriage in this State. This section provides:

"If any resident of this state marries in another state, the marriage shall be valid here if valid in the state where solemnized."

■ We doubt the applicability of the statute to this case. Marriage with an idiot or a lunatic is not valid in Mississippi. As pointed out in the Mississippi cases, such a marriage is voidable and may be annulled upon suit of the parties. The difference between a voidable marriage and a valid marriage seems clear, but we do not think it is necessary to rest our decision in this case upon the distinction. At most, KRS 402.040 is but a statement of the common law rule of lex loci contractus as it relates to marriages. This rule, so far as we are able to determine, is recognized and applied in all States.

■ The sanctity of the home and every just and enlightened sentiment require uniformity in the recognition of the marital status. The necessity that persons legally married according to the laws of one jurisdiction shall not be considered as living in adultery in another, and that children begotten in lawful wedlock in one place shall not be regarded as illegitimate in another, has given rise to the general principle of international and interstate law that the validity of a marriage is to be determined by reference to the law of the place where it was celebrated.

An exception to the general rule appears to be generally recognized. That is, that marriages which are against the public policy of the domiciliary State as contrary to morals and social order will not be recognized although the marriage may have

been valid in the State or country where celebrated. The rule is stated in 35 Am.Jur. P. 287, Section 172, Marriage:

"Although the general rule is that the validity of a marriage contract is determined by the lex loci contractus and celebrationis, it is not every marriage which may be valid by such law that will be recognized as legal everywhere else. Every sovereign state is the conservator of its own morals and the good order of its society. Consequently, where marriages between certain persons are prohibited by the public policy and law of one jurisdiction as contrary to morals and social order, they will not be deemed valid therein, although they are deemed valid in the state or place where they were celebrated * * *."

Kentucky has recognized marriages between persons under the age prescribed by KRS 402.020(5) when performed in a State permitting such marriages. Mangrum v. Mangrum, 310 Ky. 226, 220 S.W.2d 406. In that case, the decision was based upon the fact that KRS 402.030, providing that courts of equity may void marriages between persons within the prohibited age, when read in connection with the preceding statute, had the effect of making this class of marriages voidable rather than void. We also have recognized common law marriages prohibited by KRS 402.020(4). Brown's Adm'r v. Brown, 308 Ky. 796, 215 S.W.2d 971.

No cases have reached this Court in which the exception to the lex loci contractus rule has been applied. However, we have recognized that such an exception exists. In Gilbert v. Gilbert, 275 Ky. 559, 122 S.W.2d 137, 139, it was said:

"But a marriage, valid where it takes place, is valid everywhere, * * * except in those instances, not necessary to mention here, where the marriage is against the public policy of the state."

The exception is again mentioned in Mangrum v. Mangrum, supra [310 Ky. 226, 220 S.W.2d 407]:

"We have held that in view of this statute a marriage valid where it takes

place is valid everywhere except where it is against the public policy of the domiciliary state."

We, therefore, conclude that under the exception which we have mentioned we are not required to indulge the rule if the marriage contravenes the public policy of this State.

We next have to determine whether or not the marriage of an idiot or a lunatic is against the public policy of this State. In Jenkins v. Jenkins' Heirs, 2 Dana 102, 32 Ky. 102, Chief Justice Robertson said:

"A person of unsound mind—an idiot, for example, is, as to all intellectual purposes, dead; and such a thing, destitute of intellectual light and life, is as incapable as a dead body of being a husband or a wife in a legal, rational or moral sense."

At common law, such a marriage was void. 35 Am.Jur. P. 247, Sec. 107, Marriage: Jenkins v. Jenkins' Heirs, supra.

A proper concern for the institution of marriage impels our conclusion that the marriage of an idiot or a lunatic violates the fundamental public policy of this State. The capacity to enter into a marriage contract does not require sufficient mental capacity to exercise clear reason, discernment and sound judgment. We may say in passing that some of the marriages this Court has been called upon to untangle would indicate a complete absence of these qualities. However, the thought of marriage by one who is devoid of reason, or whose mind is so beclouded by insanity as to be incapable of understanding the nature of such a contract, is abhorrent. Such a marriage should be regarded as a farce.

Counsel for appellees insist that this case is controlled by Cook v. Cook, Ky., 243 S.W.2d 900 and Johnson v. Sands, 276 Ky. 492, 124 S.W.2d 774. Although these cases indicate that validity of the marriage of one alleged to be of unsound mind will be tested by the laws of the State where the marriage was performed, the decisions finally were rested upon the finding that the parties were not of unsound mind. The distinction between the lex loci and lex forum was not necessary to a determination of those cases, and the statements concerning the rule are dicta.

The judgment in the action of Thomas Beddow v. Josephine Epperson Beddow, et al., is reversed with directions to overrule the general demurrer to the petition as amended and for further proceedings consistent with this opinion.