DANA, Respondent, vs. DULUTH TRUST COMPANY, imp., Appellant.

*May 7 — May 24, 1898.*

*Principal and agent: Purchase of tax title by agent: Reimbursement, when required as a condition of relief: Mortgages: Duty of owner of equity of redemption to pay taxes: Equity: Statute of frauds.*

Plaintiff's agent, in duty bound to care for his mortgage securities, agreed with another to purchase a tax certificate on certain of the mortgaged lands, take a tax deed thereon, by judicial proceedings quiet title thereto as to all persons but plaintiff, such other to obtain a deed from the mortgagor, take possession of the lands and collect the rents in the meantime for such agent's use, and then that the property should be sold, plaintiff's mortgage be paid, such agent be reimbursed for his expenditures not covered by rents received, and the balance be divided between the parties to the enterprise. The agreement was made and carried out without knowledge of plaintiff, up to and inclusive of perfecting the title under the tax deed, such other taking the deed from the mortgagor, with a covenant therein to pay the mortgage debt. In the meantime the value of the property depreciated so as to be inadequate to secure plaintiff's debt. Upon plaintiff's discovering the facts, action was brought to vacate the tax deed, and the agent defended upon the theory, only, that he possessed a lien for taxes, merged in the deed, paramount to the principal's lien under his mortgage. *Held:*

(1) That the rule, that an agent cannot speculate with property of the principal under his charge, to the prejudice of the principal, renders voidable a tax deed obtained by such agent, of such property, which is satisfied in equity, however, by requiring the principal, as terms of avoiding such deed, to reimburse the agent for the expenditures necessary to protect such principal's interest in the land, with interest thereon.

(2) That the rule requiring such reimbursement does not apply where the agent is in receipt of rents from the property sufficient to pay the taxes, nor in any case, unless the agent, by a proper showing, places the court in a position to do complete equity by its decree.

(3) That where the plaintiff shows the existence of the relation rendering the taking of the tax deed wrongful, circumstances calling for terms of setting it aside, under the rule stated, are purely

Dana vs. Duluth Trust Co.

defensive, and unless made to appear, the judgment should go absolutely.

(4) That when a person, so circumstanced as to be in duty bound to pay the taxes, purchases a tax certificate or takes a tax deed, it operates as a redemption from the taxes and gives such purchaser no right to a lien to recover his expenditures.

(5) That it is the duty of a person, in possession under a deed conveying to him an equity of redemption from a mortgage, to pay the taxes on the property, and if the possession and title are held in trust for the grantee and another, both are bound to pay the taxes as between them and the mortgagee of the property, so that the purchase of a tax certificate on the property by either operates as a redemption from the tax.

(6) That the fact that the agreement between the person in possession and holding the title and such other is verbal and void under the statute of frauds, cannot be invoked by either in defense of a claim under the tax certificate or tax deed, under the rule that courts of equity will not permit the use of the statute of frauds to commit a fraud.

(7) That an agreement, stated in the foregoing, having been made and partially carried out without the knowledge of plaintiff, on the theory that his interests were not to be imperiled, the agent became thereby estopped from changing his position in that regard to plaintiff's prejudice.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

An action in equity involving the question of whether a real-estate mortgage owned by plaintiff is a lien on property described therein, paramount to the claim of defendant *Duluth Trust Company* under a tax deed acquired by such company while acting as agent for the plaintiff in respect to caring for his mortgage securities, including the one in question. The trial court found the issue of law in plaintiff's favor on the following facts:

From May, 1892, to November, 1894, the trust company was plaintiff's agent in respect to loaning money on real estate in Duluth, Minnesota, and Superior, Wisconsin, and collecting and remitting interest paid on such loans, and

looking after his affairs in regard to mortgage securities, among them that in question, not receiving or expecting any compensation for its services other than indirect benefits growing out of being able, through the arrangement with plaintiff, to place loans for him and make commissions thereon from the borrowers. On the 1st day of October, 1893, while acting as such agent, the trust company acquired by purchase, at its face value of $233.91, a tax-sale certificate on the mortgaged property, on the tax sale of 1892 for the taxes of 1891, and concealed that fact from the plaintiff. On the 24th day of June, 1894, defendant Stephenson, for the consideration of $1, obtained a conveyance from the mortgagors of their equity of redemption in the property, by a deed containing a clause obligating him to pay plaintiff's claim against the mortgagors. Such conveyance was obtained pursuant to an agreement entered into between the trust company and defendants Stephenson and Upham, to the effect that Stephenson should take such conveyance, the trust company perfect the title to the property by a tax deed and the prosecution of an action to judgment, quieting title in it as against all persons but plaintiff; that the company should advance all money necessary in the meantime to protect the title from tax liens, keep up interest due plaintiff, and pay the expenses of the judicial proceedings; that Stephenson and Upham should collect all rents from lessees of the property and pay the same to the trust company to be applied upon its advances; that title being perfected in such company as contemplated, the property should be sold, and out of the proceeds plaintiff's mortgage debt be paid, then the balance due the company for expenditures, under the agreement, and the residue be equally divided between the company and Upham and Stephenson. The entire scheme was carried out up to and inclusive of a judgment of the proper court, quieting title to the property in the trust company against all persons but plaintiff, who was not made a

·party.   All the defendants, including Upham and Stephenson, allowed the case to go by default.   The proceedings mentioned were carried on without knowledge of the facts ·on plaintiff's part, or of any default of the mortgagors. The date of the trust company's tax deed was April 8, 1895, and May 16th, thereafter, in order to protect its interest, it redeemed the property from the tax sale of 1892 at a cost ·of $524.34.   During all the time mentioned, plaintiff was relying on the trust company as his agent to look after his interest in the property and inform him of anything necessary to be done in the premises.   When the mortgagors first made default in the conditions of the mortgage, the property was adequate security for the debt due plaintiff, but by the time he discovered the facts it had greatly depreciated in value and become inadequate security for such debt, and the mortgagors had become wholly insolvent.

The trust company made no claim to the premises under its tax deed, other than a lien to secure a reimbursement of the moneys paid out for taxes, with interest on such moneys from the time paid.   The court decided that the company was not equitably entitled to any protection for its expenditures in acquiring tax liens on the property or payment of taxes thereon, and rendered judgment accordingly, adjudging the tax deed, and all claims of the trust company for moneys expended for taxes, void as to plaintiff.   From that the trust company appealed.

For the appellant there was a brief by *McCausland & Smith*, and oral argument by *E. F. McCausland*.

For the respondent there was a brief by *Henry J. Jordan*, attorney, and *S. T. & Wm. Harrison*, of counsel, and oral argument by *Mr. Jordan*.

MARSHALL, J.   It is familiar that the relations between principal and agent are such that the latter cannot rightfully speculate with the property of the former under his

charge, or acquire any interest therein to the prejudice of
his principal. So, if such property be real estate, the agent
cannot acquire a valid tax title thereon, or any interest
therein, in breach of his duty to his principal. *Geisinger v.
Beyl*, 71 Wis. 358. But the rule in that regard is satisfied
in equity by avoiding a tax deed wrongfully obtained, at
the suit of the principal, on condition of his reimbursing the
agent for the money such principal would have been obliged
to expend to discharge the tax lien had the agent not ac-
quired it, with legal interest thereon. That is elementary.
Authorities need not be cited to sustain it. As counsel for
appellant contend, it is so laid down by all text writers and
recognized by all courts. *McMahon v. McGraw*, 26 Wis.
614; *Fisk v. Brunette*, 30 Wis. 102; *Geisinger v. Beyl, supra;
Ellsworth v. Cordrey*, 63 Iowa, 675; Cooley, Taxation, 502;
Blackwell, Tax Titles, § 598; Black, Tax Titles, § 287. The
reason of such rule springs from the principle which under-
lies our whole system of equity jurisprudence, viz. that he
who seeks equity must do equity. The tax being a burden
on the land, collectible out of that as the primary fund,
paramount to all other claims upon it, the mortgagee is
obliged to discharge such burden, if those whose duty it is
to pay the taxes fail to do so, in order to preserve his secu-
rity; therefore, if the agent acquires a tax deed of the land
wrongfully, he becomes, nevertheless, equitably interested
in such land to the extent of the lien for taxes merged in
such deed, and entitled to retain such deed to protect such
interest. To that extent the agent's equity is superior to
that of the principal under his mortgage; therefore such
principal, in seeking equity to avoid such deed, must stand
ready to do equity by reimbursing his agent so far as the
latter's expenditures were necessary to protect the mort-
gage security.

Appellant contends that the equitable rule stated in the
foregoing applies to the facts found by the trial court; hence

Dana vs. Duluth Trust Co.

that the conclusion of law reached, that plaintiff's mortgage is paramount to the lien of appellant for its expenditures for taxes, is wrong. Whether such contention should be sustained, turns on whether the relation of principal and agent, in respect to the property, existed when the tax lien was acquired, and whether appellant bore any other relation to the property that rendered it its duty to pay the taxes.

From the foregoing it becomes important to determine what appellant's real position was in relation to the property at the time the tax certificate was acquired and the tax deed taken. The evidence and findings are to the effect that the trust company obtained the certificate pursuant to an agreement with Stephenson and Upham that all should jointly go into a speculation to realize as a profit, for equal division between them, the value of such property over and above the debt secured thereby and the amounts necessary to protect the title from tax claims in excess of rents that might be obtained in the meantime. The scheme contemplated that the trust company should purchase the certificate, perfect title thereunder by tax deed and judicial proceedings to bar all persons interested in the property except plaintiff, and advance all moneys necessary for that purpose; that Stephenson, of the firm of Stephenson & Upham, should obtain the equity of redemption from the mortgagors, take possession of the property, collect the rents thereof in the meantime, and turn them over to the trust company to reimburse it to that extent for its expenditures in carrying out the joint enterprise; and that when the title was so perfected, the property should be sold, plaintiff's mortgage debt be paid, appellant be reimbursed the balance of its advances not theretofore covered by rents received, and the residue be then divided between those engaged in the scheme. The facts found further are to the effect that the equity of redemption was obtained pursuant to this arrangement, by a conveyance to Stephenson in which, by an appropriate

clause, he agreed to pay plaintiff's claim and stand in the place of the mortgagors in respect to the covenants in the mortgage; that he immediately took possession of the property and thereafter, for several months, received rents from all buildings thereon and turned the same over to the appellant before the tax deed was taken. Whether such rents were sufficient to reimburse appellant for the cost of the tax certificate, before the tax deed was taken, does not appear, nor whether a sufficient amount was obtained thereafter for that purpose; but appellant had the benefit of the rents, whatever they were. Now here comes in an exception to the rule that an agent, taking a tax deed on his principal's property, is entitled to be reimbursed in equity for the amount of his expenditures which were a lien thereon, viz. that the agent cannot acquire a valid tax deed on the lands of his principal, nor successfully assert a lien under a tax deed so obtained for the amount of taxes represented thereby, if he had in his hands rents and profits from the premises sufficient to reimburse him for the necessary expenditures to take up the tax lien. *Travellers Ins. Co. v. Patten,* 98 Ind. 209. In the same line, though not directly in point, is *Fox v. Zimmermann,* 77 Wis. 414.

It does not appear whether the rents received by appellant were sufficient to cover necessary expenditures for taxes. A necessary part of the accounting, requisite to the court's granting the relief asked, was for appellant to make a complete showing of receipts as well as expenditures, and failing in that, it was right to deny such relief entirely. Upon plaintiff's establishing the relation of principal and agent between him and the trust company, and that it obtained the tax deed in breach of its duty growing out of such relation, plaintiff became entitled to the relief prayed for, unless the trust company made a proper showing to enable the court to determine definitely its equitable claims upon the property. That it failed to do.

But there is another principle which seems to apply to the facts; that is, that a person who, because of his interest in the property, is in duty bound to pay the taxes thereon, cannot obtain a tax deed on such property so as to cut off the rights of others interested therein, or acquire any lien thereon for the money expended for taxes in acquiring such title. The buying of a tax certificate under such circumstances operates merely as a payment of, or redemption from, the tax. *Smith v. Lewis*, 20 Wis. 350. Says Cooley on Taxation (page 501), in substance, this principle is so universal, so reasonable and just, as to scarcely need the support of authority. Show the existence of the duty, and the disqualification to take the tax deed or acquire a tax lien is made out in every instance. That disability applies to the purchaser of the equity of redemption. *Travellers Ins. Co. v. Patten, supra.* In *Avery v. Judd*, 21 Wis. 262, this court held in effect, that the purchaser from a mortgagor, subject to a mortgage, stands in his stead and is in duty bound to pay the taxes the same as his grantor, and if a person so circumstanced acquire a tax deed of the property, it is utterly void; *a fortiori*, that must necessarily be the case when the conveyance of the equity of redemption contains a clause by which the grantee assumed and agreed to pay the mortgage debt.

From the foregoing it is clear that it was Stephenson's duty, not only on general principles of equity, but under the covenant in his deed, to pay the taxes represented by the tax certificate upon which the tax deed in question was issued, and to pay all taxes on the property during the life of the mortgage. Now it stands as a verity in this case that the appellant was, really, equally interested with Stephenson in the equity of redemption; that to the extent of the necessary expenditures for taxes, it was the sole beneficiary of the interest which he acquired under the deed from the mortgagors. Stephenson was a mere trustee of the title for

the sole use and benefit of the appellant, till reimbursed for all expenditures incurred by it in carrying out the joint enterprise; and upon the tax deed being taken, appellant became, at most, as between the parties, the owner of the property subject to the plaintiff's mortgage, if the scheme were carried out as agreed upon, for it does not appear to have been contemplated that plaintiff should be prejudiced by the speculation that was going on between the trust company and Stephenson and Upham, till long after the tax deed was taken. Not till the depreciation in the value of the property destroyed the prospect of profits in the enterprise and jeopardized the prospect of recovering the money expended by appellant and his associates as well, did it occur to them to insist upon the tax claim as a lien paramount to the plaintiff's mortgage. Therefore, no reason is perceived why the trust company should not be considered in equity bound, as one of the owners of the equity of redemption, to pay the tax the same as if such equity had been actually vested in it. It occupied no better position merely because the title was placed in the name of another for its use. The fact that the agreement for the speculation was verbal, and voidable under the statute of frauds on that account at the option of either party to the enterprise, does not affect the question. Appellant, while in duty bound to protect the plaintiff's interest in the land, made the arrangement detailed, to acquire title to the property, ostensibly without prejudice to plaintiff's rights. It kept silent as to all the operations when honesty required it to speak, if plaintiff's rights were in any way in jeopardy, and thereby it is estopped from now changing its position to plaintiff's prejudice.

There is no principle better established in equity than that the statute of frauds cannot be invoked to enable the party who relies upon it to perpetrate fraud. In short, courts of equity will not sanction the use of the statute of frauds as an instrument of fraud. 2 Pomeroy, Eq. Jur.

§ 921.   Here the trust company, as stated, was as much interested as Stephenson in the title acquired by him, and, in order to realize on their scheme, was as much in duty bound to pay the taxes on the property and to pay the mortgage debt, though it was so circumstanced that it might have withdrawn, no doubt, from the arrangement at any time, unless estopped on some principle of equity.  To allow it now, because the scheme miscarried by reason of a depreciation in the value of the property, to change its position to the plaintiff's prejudice, and succeed in recovering the money paid for taxes upon the ground that the contract entered into by it with Stephenson and Upham was void under the statute of frauds, it seems would be using that beneficent statute to perpetrate a fraud.  It is not the business of courts of equity to permit that.

It follows from the foregoing that the judgment appealed from must be affirmed.

*By the Court.*— So ordered.