McQUEEN v. STATE.*

(In Banc.   May 25, 1925.)

[104 So. 168.   No. 24661.]

1. WITNESSES. *Rule as to competency of one spouse to testify against other at common law stated.*

   Under the common law, one spouse could not be introduced to establish a crime against the other, except where the crime, such as assault and battery, or like offense was committed against the other spouse.

2. WITNESSES. *State may not introduce wife to prove former marriage in prosecution of husband for bigamy; "controversy between husband and wife."*

   In prosecution of husband for bigamy, wife may not be introduced by state against husband to prove former marriage, under Code 1906, section 1916 (Hemingway's Code, section 1576), making husband and wife "competent witnesses in their own behalf as against each other in all controversies between them;" a bigamy prosecution not being a "controversy" between husband and wife within the statute.

   ANDERSON and COOK, JJ., dissenting.

---

*Headnotes 1. Witnesses, 40 Cyc., pp. 2210, 2219; On competency of husband or wife as witness against the other in criminal case, see notes in 2 L. R. A. (N. S.) 862; 22 L. R. A. (N. S.) 240; 41 L. R. A. (N. S.) 1213; 28 R. C. L., pp. 480, 481; 2. Witnesses, 40 Cyc., p. 2221; Bigamy or polygamy by one spouse as a crime against the other spouse within statute relating to competency of husband or wife as witness against the other, see note in 4 A. L. R. 1072; 28 R. C. L. p. 485; 3 R. C. L. Supp., p. 1577, 4 R. C. L. Supp. 1825.

Appeal from circuit court of Pearl River county.

Hon. J. Q. Langston, Judge.

William McQueen was convicted of bigamy, and he appeals. Reversed and remanded.

*Wm. A. Shipman,* for appellant.

The court below erred in admitting Mrs. Louise Mc-Queen wife of the appellant, and in permitting her to be sworn in the presence of the jury, and in allowing her to be called as a witness against the defendant, over his objection, and in permitting her to testify against her husband. *Finklea* v. *State,* 94 Miss. 777, 48 So. 1, where appellant was charged with and convicted of burglary, his wife was not permitted to testify. See, also, *Carter* v. *State,* 54 So. 734.

It was manifestly serious, grave and reversible error to admit the testimony of Mrs. McQueen over the objections of the defendant thereto.

By section 1679, Code of 1906, in the trial of suits for divorce, both parties shall be competent witnesses against the other. Another exception is in section 1916, Code 1906, whereby it is provided that "a husband and wife may be introduced by each other as witnesses in all cases, civil and criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them." But the testimony of Mrs. McQueen was not admissible under this section.

This court held in *McRae* v. *State,* 104 Miss. 861, 61 So. 977, that where a husband and father is being tried for vagrancy for failure to support his wife and child, without just cause, it is in effect a controversy between husband and wife, and is such a controversy as renders the wife competent to testify against her husband. The court says further that while the statute makes such failure to support, without just cause, a public wrong, remedial in its nature, that it is also a police regulation to compel the husband and father to provide for the support of his wife and children, so that they may not become a public charge, yet, in effect it created a contro-

versy between the husband and wife; that the subject of the controversy is whether the husband shall support his family, and for this reason the court held the testimony of the wife to be competent and admissible. If the charge against the appellant here had been for failure to support his wife or children without just cause, a very different issue would have been presented to the court.

At common law the husband and wife were not competent as witnesses for or against each other—generally, but that an exception to the general rule was that a wife was a competent witness against her husband in a prosecution for an assault and battery committed by him on her person; that by statute in this state, the general rule has been further modified, so that in the trial of divorce suits both parties are competent to testify against the other; that wives and husbands are competent to testify as witnesses for each other in all cases, civil or criminal, and are competent witnesses in their own behalf as against each other in all controversies between them. The provisions of the last-mentioned exception have been extended by construction to include a case where the husband is under prosecution for failure to support his wife, without a just cause. Beyond this the court has not gone, and I apprehend it will be a long time before an exception will be grafted on the general rule, either by legislation or construction, that will have the effect of including within any exception the competency of husband and wife as witnesses against each other, where one is indicted and on trial for a felony, bigamy, for instance, a crime pure and simple, where the controversy or issue is wholly between the sovereign state and the accused.

With the exceptions and modifications mentioned the law in this regard remains as it was at common law. *Strauss* v. *Hutson,* 104 Miss. 637, 61 So. 594.

Under Code 1871, section 760, husband and wife are made competent witnesses for each other in civil cases, and by section 759, it is provided that: "Husband and wife may be witnesses for each other in all criminal cases, but they shall not be required to testify against each other, as witnesses for the prosecution. Nothing

herein contained shall be so construed as to debar full
cross-examination by the prosecution of any husband
or wife who may be placed on the stand for the defense."

By section 1739, Code of 1892, the statute relative to
the competency of husbands and wives as witnesses for
each other, is brought forward from section 1601, Code
1880, which latter section reads: "Husband and wife
may be introduced by each other as witnesses, in all cases,
civil or criminal." As brought forward into the Code of
1892, section 1739, the section reads: "Husband and wife
may be introduced by each other as witnesses in all cases,
civil or criminal, and shall be competent witnesses in
their own behalf, as against each other, in all contro-
versies between them." This section is brought forward
in the Code 1906, as section 1916, exactly as it appears in
the Code of 1892, and as section 1576, Hemingway's
Code, without change.

In *Byrd* v. *State*, 57 Miss. 243, 34 Am. Rep. 440, decided
under the statute as cited and quoted from the Code of
1871, the court below held that under the provision of
the statute as then in force, the wife might become a
voluntary witness for the prosecution against her hus-
band's consent; but the supreme court, by Judge George,
held it to be a wrong construction of the statute; that the
statute is in derogation of common law; of a very ancient
and well-established rule of the common law, based in
great part upon grave reasons of public policy; that
statutes which are in derogation of the common law must
be strictly construed and limited to the expressed intent
of the legislature.

See case note under *Byrd* v. *State*, 57 Miss. 243. In
34 Am. Rep. at 440, it is said that the New York Oyer
and Terminer Justice Osborn presiding, quashed the in-
dictment in the case of Briggs for the murder of Woods,
for the reason that the prisoner's wife was allowed to
testify for the people against her husband before the
grand jury. The statute under which this testimony was
introduced is as follows: "In all criminal trials and ex-
aminations before trial a husband or wife may be ex-

amined in behalf of each other, but upon no such trial shall a husband or wife be compelled to testify against the other.''

In *Pearson* v. *State,* 97 Miss. 841, 48 So. 1, a prosecution wherein the accused was charged with the rape of his own daughter, of tender years, it was held that the wife could not testify against the husband, citing *Gardner* v. *State,* 76 Miss. 515, 25 So. 363.

Exceptive provisions must be strictly construed. The clauses in statutes excepting from the prohibition, and permitting a husband or wife to testify against each other in certain cases, are to be strictly construed, as in derogation of common law and in order to invoke the application of the exception it must appear that the case is clearly within the terms of the exception. *Lihs* v. *Lihs,* 44 Nebr. 143, 62 N. W. 457; *Huot* v. *Wise,* 27 Minn. 68, 6 N. W. 425; *Matthews* v. *Yerix,* 48 Mich. 361, 12 N. W. 489; *Carney* v. *Gleissner,* 58 Wis. 674, 17 N. W. 398; *Birdsall* v. *Dunn,* 16 Wis. 235. The same rule is enforced in the federal courts. *Jognson* v. *U. S.* (C. C. A. 8th Cir. 1915), 221 Fed. 250; *U. S.* v. *Gwynne* (E. D. Pa., 1914), 209 Fed. 993.

*F. S. Harmon,* Special Assistant Attorney-General, for the state.

This entire case turns upon the competency of the lawful wife as a witness. Mrs. Louise McQueen, called as a witness for the state, stated that her name was Louise McQueen and upon being asked whether she was married or single responded that she was a married woman; that before her marriage her name was Louise Blanco; that she married William McQueen and pointed out the defendant at the bar as the said William McQueen. She testified as to the date of the marriage, the church where the ceremony took place, the minister who performed the ceremony, and the fact that she held in her hand the marriage certificate furnished her by the minister. She stated that she and her husband lived together by virtue

of that ceremony for a little over four years; that two boys present in the court room were children by that marriage, and that she had never been divorced from the said William McQueen.

The court's attention is called at the very outset to the fact that the above, which sums up all the testimony given by this witness, shows that her testimony related solely to the fact of marriage, and not one single question or answer is found in this record wherein this lady drew back the curtain and disclosed the slightest fact concerning the marriage relation. She testified purely and simply to the fact of marriage.

Regardless of the wisdom or policy of the rule, the state recognizes that at common law husband and wife were not competent to testify for or against each other, as a general proposition. 3 Wigmore on Evidence, 2227, and following. However, even at common law, from necessity the testimony of one spouse was admitted against the other in certain exceptional cases, such as injuries to the spouse by battery and attempt to kill by poison, a rape of the wife committed by the husband or at his instigation, etc. 3 Wigmore on Evidence, 2239.

Furthermore, statutes of various states have created additional statutory exceptions, particularly in the case of "crimes committed against the other spouse," and such crimes as adultery, incest and bigamy are held to come within this class. As we see it, this case turns however on the Mississippi statute, Hemingway's Code, section 1576.

The specific question before this court for determination is whether or not this is such a "controversy between them" as to render this testimony admissible. We vigorously insist for the state that this cause comes well within the intention of the legislature, as expressed by said language.

In *McRae* v. *State,* 104 Miss. 861, 61 So. 977, the husband was prosecuted criminally for vagrancy, under section 5055k, Code 1906, making every person who shall abandon his wife and family without good cause, leaving

them without support, a vagrant. In this case the wife swore out the affidavit against the husband. He was tried for this criminal offense, convicted and punished therefor, and this court on appeal affirmed the judgment of conviction entered in the court below.

In the case at bar Mrs. Louise McQueen, like Mrs. McRae, swore out the charge against her husband and it was as a result of her action that he was arrested, indicted, tried and convicted for bigamy. In the McRae case the state conducted a criminal action against the husband upon the initiative of the wife; in the case at bar the state conducted a criminal action against the husband upon the initiative of the wife. In each case an abandonment of the wife preceded the action. In the one case this abandonment was followed by non-support which led to the prosecution for vagrancy; in the other case this abandonment was followed by a second ceremony of marriage which, under the laws of this state, constituted bigamy.

After thus seeing how closely the two cases parallel each other, the attention of the court is called to the following quotation from the opinion of this court in the McRae case, as delivered by Judge Reed at page 870. After stating that objection was made to Mrs. McRae testifying in rebuttal and a motion then made to exclude her entire testimony and that the court overruled this objection and motion, Judge Reed said:

"The question now presented to us is whether the testimony of Mrs. McRae was admissible under the section (1576) last mentioned; that is, whether the present proceeding is a controversy between the husband and wife. In the case of *Vance* v. *State,* 61 So. 305, we hold that the abandonment and failure to support a wife and family without just cause is by the statute made a public wrong, remedial in its nature . . . In the present case the affidavit was made by Mrs. McRae, the wife. While she was proceeding under the regulation, as provided by the statute for relief in such cases, yet in effect there is a controversy between the husband and wife.

The subject of this controversy is whether the husband shall support his family. We believe that this is such a controversy as to render competent the testimony of the wife in this case.''

If the controversy in the McRae case was a controversy between husband and wife, then surely the fact that the defendant was tried for a misdemeanor and here he is tried for a felony can make no earthly difference, for Judge Reed pointed out that the subject of the controversy in the McRae case was in fact whether the husband should support his family. By the same token, the subject of the controversy in this case was whether or not the husband should be forced to respect the marriage ties consummated under the laws of Louisiana with this lady who now testified against him. If the abandonment of wife and children creates a controversy between husband and wife, then certainly an abandonment of wife and children, plus the additional fact of the participation in a marriage ceremony with another woman and the non-support of the lawful wife and children and the support of the alleged second wife, creates a controversy between them. The appellant here did exactly what McRae did, plus the additional acts, making his violations of law more flagrant and making his controversy with his wife of a more serious and permanent character. In both instances the solemn vows of the marriage covenant were repudiated. And in the case at bar on top of this repudiation, on top of this abandonment, there was the added outrage of an attempted second marriage before the bonds of the first were legally broken.

While insisting therefore that the McRae case is conclusive here and that the decision therein is correct on principle, we now refer the court to authorities in other jurisdictions under statutes of similar import which fortify us in the contentions here made in behalf of the state.

In *Iowa* v. *Sloan* (1880), 7 N. W. 516, the defendant was convicted of the crime of bigamy and his wife was held to be a competent witness, under section 3541 of the

Code, which provided that neither husband nor the wife shall be a witness against the other, except in a criminal proceeding for a crime committed against the other. To the same effect, see *State* v. *Hughes* (1882), 11 N. W. 707.

In *Lord* v. *State* (Neb., 1885), 23 N. W. 508, where the defendant was indicted for deserting his wife and living with another woman in a state of adultery, the wife was held to be competent witness, under section 331, Civil Code of Nebraska, which provides that: "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by the one against the other, but they may in all criminial prosecutions be witness for each other."

Again in *Owens* v. *State* (Neb., 1891), 49 N. W. 288, the court reaffirmed the doctrine of the Lord case. The leading Nebraska case is *Hills* v. *State* (1901), 61 Neb. 589, 57 L. R. A. 155.

In *State* v. *McDuffie* (N. Car., 1890), 12 S. E. 85, where the husband was permitted to testify against the wife upon her trial for adultery, the court said: "The evidence if objected to in apt time would have been properly admitted. Code section 588 makes the husband or wife incompetent and not compellable 'to give testimony for or against the other in any action or proceeding on account of adultery (except to prove the fact of marriage).' Indeed the fact of marriage is not within the reason of the rule of public policy which makes the husband or wife incompetent to prove any transactions after marriage. In its nature, marriage is intended to be not confidential, but public and notorious. No error." We call the court's special attention to this statement made by the North Carolina court that the fact of the marriage is not within the public policy of the old common-law rule.

This should be so clear that even if we had no statute on the subject, we would feel no hesitation whatever in asking this court to hold this particular testimony in the

case at bar to have been clearly admissible. Communications between husband and wife are and ought to be privileged, but it is the public, notorious fact of their marriage, it is the fact that they are husband and wife that is responsible for the privilege; and all that Mrs. McQueen here testified to was the fact that she was lawfully married to this appellant. That is not a fact to be kept secret within the boudoir, but one to be published to the wide, wide world. Where the reason for the rule ends, the rule itself must go, and none of the reasons set forth by Mr. Wigmore in his exhaustive treatment of this subject, applies. No one, by the wildest stretch of the imagination, can show any public policy whatever in forbidding the wife, even in the absence of the statute, to testify as to the fact of marriage. In other words the testimony of Mrs. McQueen in this case was not anti-marital, but pro-marital and this makes a vast deal of difference when the question of its competency is before the court.

Besides, if a wife who has been beaten or poisoned can, under the common-law rule, describe the scene taking place in the privacy of the home, then surely this wife is competent to testify as to the marriage performed by a clergyman in a New Orleans church.

In *Turner* v. *State* (1882), 60 Miss. 351, where a husband was indicted for assault and battery committed against the wife, the woman was permitted to testify, Judge Cooper pointing out that this common-law exception "was permitted for the protection of the wife; but it was a protection afforded to her not purely as an individual, but as one of the public."

The rule of the McDuffie case was re-stated by the North Carolina court in *State* v. *Melton* (1897), 26 S. E. 933. Again in *Commonwealth* v. *Hayden* (1895), 163 Mass. 453, 47 A. S. R. 468, the first and lawful wife was permitted to testify in the criminal prosecution of her husband for bigamy.

The Massachusetts court here pointed out that contracting parties can furnish the best evidence of the fact

of marriage, and on this ground, as well as on the ground that the testimony is to a fact notorious and public and not with regard to matter privileged and confidential, such testimony should be admitted.

We submit that if the statutory phrase "may testify in a crime committed by one against the other" is broad enough to include these cases cited, then by the same token our own statute permitting one spouse to testify in any controversy against the other is plenty broad to include this cause.

Marriage is a *status*. But the *status* is based upon contract, and Mrs. William McQueen and this appellant were the contracting parties. When this appellant went through the marriage ceremony with Miss Burge this act not only constituted a crime against the state, but it was also a gross violation of the marital relation, which, as we have just stated, is based on contract. There was, therefore, in every sense of the word a "controversy" between this witness and the appellant, and while the state is a party, just as the state was a party to the Mc-Rae case, the state steps in to represent the lawful wife, as well as the interest of the public. See opinion of Chief Justice Zane in *U. S.* v. *Bassett*, 5 Utah, 131, 136, 13 Pac. 237. Also see doctrine in *State* v. *McDavid*, 15 La. Ann. 403, 404.

In the light of these decisions, we feel confident that this court will hold that both on principle and under the language of our own statute, Mrs. Louise McQueen was a competent witness in the trial of her husband for bigamy, to prove a single fact, that of lawful marriage.

Argued orally by *W. A. Shipman*, for appellant, and *Francis Harmon*, Special Assistant Attorney-General, for the state.

Holden, J., delivered the opinion of the court.

William McQueen appeals from a conviction on a charge of bigamy. The appeal will be disposed of by the

decision of one question, and that is whether or not the wife may be introduced by the state against the husband to prove the former marriage, where the husband is on trial for bigamy.

It is well settled that under the common law one spouse could not be introduced to establish a crime against the other, except where the crime was committed against the other spouse, such as assault and battery and like offenses; but we have a statute (section 1916, Code of 1906; section 1576, Hemingway's Code) which provides as follows: "Husband and wife may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses, in their own behalf, as against each other, in all controversies between them."

It is the contention of the state that it was competent to introduce Mrs. McQueen, the wife of the appellant, to establish their former marriage at New Orleans, because the charge of bigamy is a "controversy between them" and within the above statute, which allows testimony by one spouse against the other. And the attorney-general cites and relies upon the case of *McRae* v. *State*, 104 Miss. 861, 61 So. 977, to support his contention.

We are unable to agree with the attorney-general that the case before us comes within the exception of the statute, because we do not think it is controversy between the husband and wife within the meaning of the statute.

The crime of bigamy is wholly in the nature of a public wrong, and does not involve the former wife in the sense of a controversy between them, and may not be prosecuted by her. It might be in some cases that the wife would disbelieve the charge and would have no desire or interest in convicting her husband as having done a wrong to her. Could she then be put on against the husband? We cannot see wherein such a prosecution can be viewed as a controversy between the husband and wife as intended by the statute.

The statute, *supra,* making an exception, has reference to civil controversies between the husband and wife, or

where one of them had offended the other within the exception named. There might be a controversy between the husband and wife within the meaning of the statute, where the prosecution of one by the other was *quasi*-criminal, such as the prosecution of the husband by the wife for vagrancy, as in the *McRae case, supra.* In that case the court said: ''While she was proceeding under the regulation, as provided by the statute for relief in such cases, yet in effect there is a controversy between the husband and wife. The subject of this controversy is whether the husband shall support his family. We believe that this is such a controversy as to render competent the testimony of the wife in this case.''

It seems clear to us the court was careful to say that the wife might testify against the husband on a charge for vagrancy, where she was interested in compelling the husband to support her and her children, because this prosecution is both civil and criminal in its character, and is, in that way, a controversy between the husband and wife; but not otherwise.

But the case before us is one where the conviction of the husband could not result in any material benefit to the wife, unless we say that desire for revenge makes it a controversy between the husband and wife. We do not think the statute was intended to make an exception in such a case. The conviction of the husband, it seems to us, would be wholly in satisfaction of a public wrong, and not a civil or *quasi*-criminal wrong toward the wife as contemplated by the statute.

In view of these conclusions, the judgment of the lower court is reversed and the case remanded, for a new trial.

*Reversed and remanded.*

Anderson, J. (dissenting).

The holding of the majority opinion in my judgment is so unsound and far reaching in its effects that I feel impelled to dissent therefrom. Appellant's wife was

competent as a witness against him in this case, both under the statute and at common law.

The statute makes the wife a competent witness against her husband "in all controversies between them." This court held in *Turner* v. *State,* 60 Miss. 351, 45 Am. Rep. 412, and *McRae* v. *State,* 104 Miss. 861, 61 So. 977, that a wife was a competent witness against her husband in a criminal prosecution of the latter for a wrong done her constituting the crime for which he was being prosecuted. The Turner case was a prosecution of the husband for an assault and battery on the wife, and the McRae case was a prosecution of the husband for the crime of vagrancy, consisting of the desertion of his wife and child without just cause, leaving them without support. The court necessarily held in those cases that, where the crime for which the husband was being prosecuted consisted of a wrong done the wife, there was a controversy between them within the meaning of the statute. It was expressly so held in the McRae case. The statute is not confined to civil controversies. It covers criminal controversies, provided the crime under inquiry consists of a wrong done the wife by the husband.

In the Turner case, in discussing the reason of the common-law rule making the wife incompetent, the court said that it was based on the unity of person and interest subsisting between husband and wife, and also out of the regard which the law had for the harmony of the marital relation. Wigmore in his work on Evidence, vol. 4, section 2239, discusses the common-law rule and the exceptions thereto. The facts of this case bring it clearly, it seems to me, within the exception to the common-law rule of the incompetency of the wife. It is true we have a case here, not where the husband has committed an assault and battery on his wife, but he has done worse. He has done her a greater wrong, it seems to me. He has not only deserted her and refused to support her, as was done by the husband in the McRae case, but in addition he has married another woman. To say that a husband who has deserted his wife and married

another woman without cause and without authority of law has not wronged his wife is beyond me. It is hard to conceive how a greater wrong could be done a wife.

COOK, J., concurs in these views.