## Doss *v.* State.

(In Banc. Feb. 17, 1930.)

[126 So. 197. No. 28539.]

L. B. Melvin, of Laurel, for appellant.

**Forrest B. Jackson**, Assistant Attorney-General, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Alonzo Doss was indicted, tried, and convicted for rape, and sentenced to death. The indictment charges the rape to be upon one Bessie Lee Powe, a female child under the age of twelve years.

It appears that in June, 1929, the appellant went to Mobile, Alabama, and took lodgings in the house of a negro woman named Ella Powe, spending a couple of days and nights there, and representing to her that he was the brother of Ella Powe's brother's wife, who lived in Laurel, Miss., and when he was about to return from Mobile he asked Ella Powe to let the girl, Bessie Lee Powe, go with him to visit her uncle who lived in Laurel, to which Ella Powe, the mother assented. She testified that the appellant and the girl went towards the depot, and that, not hearing from them within a reasonable time, she called her brother at Laurel and learned that the child and Doss had never appeared there. She thereupon went to Laurel, met Doss, the appellant on the street there, and accosted him about her child, and she testified that he stated if she would get in the car he would carry her to where the child was. She got in the car, and they started in a westerly direction, and, when some distance out of Laurel, the appellant began to abuse and threaten her, and she got scared and jumped out of the car and returned to Laurel, where she gave information to the officers. She further testified that the appellant would not state where the child was.

Bessie Lee Powe was introduced as a witness over the objection of the appellant, his ground of objection being

that she was his wife; and it appears from the evidence that a license was procured and a marriage ceremony performed by a minister of the Gospel. The court overruled appellant's objection, and the witness testified to several separate acts prior to the alleged marriage, each of which constituted a rape. The appellant objected also to the introduction of more than one of these acts, and moved to require the state to elect upon what act it would proceed, which motion the court overruled, to which exception was taken.

It appears from the evidence that, when the appellant returned to the plantation upon which he was employed, he stated to the owner of the plantation that Bessie Lee Powe was not his child, he having previously represented this to the planter and several other persons, that Bessie Lee Powe was his child, and that he desired to marry her. The wife of this planter talked to Bessie Lee Powe, and testified that Bessie stated she was eighteen years of age, and that she was willing to marry appellant. She further testified that she and her husband were present at the marriage, which was duly and regularly performed. The minister who performed the marriage ceremony also testified that said ceremony was regularly performed, and that the questions usually asked in such cases were actually asked and were written down by the white lady who was present at the marriage.

It further appears that after Ella Powe, the mother of the girl, returned to Laurel and reported to the ofcers, they began a search for her child, and finally came to the house where the appellant was living with the child, knocked at the door, and, receiving no answer, broke the door open and entered, there finding appellant who came towards them stating, ''You can't do anything with me (using an oath), because I have married.'' The child was tied upon the bed, and was in a bad condition physically. She was removed to the city hospital and there examined by a physician, who testified that she

was in a lacerated condition and injured. The child was placed in a hospital for treatment.

The testimony of the officers was objected to on the ground that they had no legal warrant to either search the house or make the arrest, which objection was, by the court, overruled. We do not pass upon this assignment, because it does not appear that the officers were seeking to arrest the appellant.

The question as to the competency of the witness of Bessie Lee Powe, on the ground that she was the wife of the appellant, and as to whether, as such, she was competent to testify, depends upon the answers to two questions: First, Was the marriage ceremony duly performed upon a license issued therefor void, or merely voidable? and, second, Was the wife competent to testify to an offense committed against her person prior to her marriage?

The court below proceeded upon the idea that both of these questions could be answered in the affirmative, and that the witness was competent for both reasons.

The girl testified that the appellant threatened her with death if she did not yield to him, and if she reported to any one the acts done, and that she was afraid of him, and did not report the acts done because of fear. She also testified that the appellant told her if she did not consent to the marriage he would kill her, and she did not know anything about marriage, and was not willing thereto.

The chancery court alone has jurisdiction to determine the validity of a marriage, and questions as to its annulment, and to divorce from the bonds of matrimony in case of a voidable marriage. In other words, no other court has jurisdiction authoritatively to determine their validity so as to bind parties to alleged marriages. It is well known that children reach the age of puberty at different ages, some maturing earlier than others.

At common law, marriage was not void because of the nonage of the parties. 38 C. J. p. 1282, section 12.

In the case of Hargroves v. Thompson, 31 Miss. 211, in discussing the effect of an irregular marriage, without the consent of the parent, the court said: "The next objection is, that the marriage of the petitioner with the intestate was illegal and void; it having taken place without a legal license, such as is required by our laws, and without the consent of the mother, or legal guardian of the intestate; she being under the age of eighteen years. It is admitted, that by the common law the marriage would have been valid, under the circumstances stated in the answer. But it is said, that this rule is changed by our statutes (Hutch. Code, 492) and that it must be understood that the legislature intended, by those enactments, that no marriages should be valid, unless solemnized in the manner thereby directed. It will be observed, that there is nothing in these statutes directly rendering marriages conducted without the observance of the rules therein prescribed, illegal and void; and the rule which has been sanctioned with reference to marriages not solemnized according to statutory regulations is, that even prohibitory words in a marriage act will not authorize an inference of the nullity of the marriage, unless the nullity was declared by the act. . . . And, although persons who may violate the forms required by the statute in solemnizing marriages, may be liable to the penalties prescribed for non-compliance, yet, marriages contracted without a conformity to such regulations, are very generally held to be valid, if made between parties capable, by the common law, of contracting them, unless the statutes positively declare, that marriages not conducted in conformity to their provisions shall be void."

In Holland v. Beard, 59 Miss. 161, 42 Am. Rep. 360, it was also held that a father cannot maintain an action of debt upon the official bond of a circuit clerk for the issuance of a marriage license authorizing a marriage between his daughter, under the age of eighteen years, and another, the father of the girl not having given his

consent thereto, and that the effect was to displace the father's right to the services of his daughter, and that an action therefor was not maintainable.

To hold that the marriage of a girl under twelve years of age, and over ten years of age, the common law age of consent in rape cases, under all the circumstances, is absolutely void without any chancery court procedure whatever, might imperil the validity of a number of marriages and the legitimacy of children. It appears to be the rule that a marriage, if solemnized in due and regular form, can only be annulled by said parties thereto in a court of competent jurisdiction. In other words, it appears to be the general rule that a female under marriageable age may repudiate a marriage or may abide by it at her option, and that a party who is of age and competent to contract is bound by the contract of marriage until it is annulled or a divorce has been obtained. It is true that the girl's testimony in the case at bar would warrant the court, if it believed such testimony to be true, in annulling the marriage and declaring it void from the beginning because of the duress exercised by the appellant over the child. The annulment or divorce proceedings, however, would have to be had in the chancery court. It cannot be done in the circuit court, or in a collateral proceeding. Ellis v. Ellis, 152 Miss. 836, 119 So. 304. This marriage was either subject to annulment, or was merely a voidable marriage which could be dissolved by annulment or divorce, at the option of the child, but there is nothing in the record to show that any such proceeding has, at any time, been taken.

By chapter 35, Laws of 1928, it is provided that: "Husband and wife may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf as against each other in all controversies between them, but in all cases, except in controversies between husband and wife and divorce cases and proceedings where either or both husband and wife are parties thereto, neither shall be com-

petent as a witness with respect to any matters involved in said litigation without the consent of both husband and wife, and in all cases where husband and wife, or either, are parties, where interrogatories are propounded by bill or otherwise to either or both husband and wife, neither husband or wife shall be required to answer same or to make discovery of any matters involved in any such case.''

At common law, the wife was a competent witness against her husband for acts or personal violence to her, but was otherwise incompetent. The general rule seems to be that the personal injuries must be such as occur to the husband or wife, as such, during the existence of the marriage state, and it seems to be the general, if not the universal rule, that a wife cannot testify in criminal cases against her husband as to crimes committed against her prior to their marriage.

In 6 Encyclopædia of Evidence, p. 891, under the heading, ''Rape before marriage,'' it is stated that a wife may not testify to a rape committed on her by a man she has since married, citing authorities.

The question has been before the courts of several states, and it appears to be the universal rule that a wife is not competent to testify as to a rape committed on her prior to her marriage to her husband. In State v. McKay, 122 Iowa, 658, 98 N. W. 510, the court, in discussing the question, after quoting the statute of that state which is similar to ours, said: ''There is no doubt that the witness was defendant's wife when she was called to give testimony against him, and that she was incompetent, under the statute quoted, unless it be found that this is a criminal prosecution for a crime committed by one against the other. This exception, taken from the statute, of course, means a crime of the husband against the wife, or the wife against the husband, while they occupy that relation. There cannot be a crime one against the other unless the relation exists. In other words, a crime committed against one who is not at the time the spouse

of the other is not a crime of husband against the wife, or of wife against the husband. This is so plain that no amount of reasoning can make it any clearer. When the crime charged in this case was committed, Ida Kraft was not defendant's wife, but when she was called as a witness she was. By reason of her then relation she could not be a witness against her husband, except in a criminal prosecution for a crime committed by her husband against her—his wife—as such. Moreover, the alleged offense, in so far as the wife is concerned, was condoned by her subsequent marriage to the offender. Doubtless this condonation should not be held a bar to a criminal prosecution, notwithstanding the marriage; but the offense, whatever it was, was so far condoned by the woman upon whom it was committed that it cannot be said it was a crime committed one against the other, and therefore within the spirit, if not within the letter, of the statute"—citing People v. Curiale, 137 Cal. 534, 70 P. 468, 59 L. R. A. 588; State v. Evans, 138 Mo. 116, 39 S. W. 462, 60 Am. St. Rep. 549; State v. Frey, 76 Minn. 526, 79 N. W. 518, 77 Am. St. Rep. 660; Miller v. State, 37 Tex. Cr. R. 576, 40 S. W. 313; People v. Schoonmaker, 117 Mich. 191, 75 N. W. 429, 72 Am. St. Rep. 560; People v. Vann, 129 Cal. 118, 61 P. 776. We have examined these cases, and find they hold in accordance with the case quoted from.

In McQueen v. State, 139 Miss. 457, 104 So. 168, we held that a wife could not be introduced in a prosecution for bigamy to prove a marriage between them, and that a prosecution for bigamy was not a controversy between husband and wife within the statute.

It follows, therefore, that, so long as the marriage has been duly performed under license issued therefor, the wife is not a competent witness against her husband except for a crime committed against her while such relation exists. If the marriage is dissolved or annulled, her competency would be restored as to the offense com-

mitted prior to said marriage. Hesdorffer v. Hiller, 111 Miss. 16, 71 So. 166, Ann. Cas. 1918E, 191.

We are also of the opinion that it was error for the court below to permit the introduction of more than one offense. When one offense was proved, it was complete, and did not depend upon a repetition of the offense for any efficacy, nor does the repetition of the offense lend any inherent probability to the prosecution. In Collier v. State, 106 Miss. 613, 64 So. 373, we held, in the second syllabus, that: "It is not permissible in a prosecution for rape for the state to prove, independent and distinct crimes to the one on trial, unless they form part of a system, or a part of the res gestæ, or to identify the accused,"—and in the third syllabus that: "Upon the trial of an indictment, a previous or subsequent crime committed by defendant can only be proved: (a) Where it is connected with the one charged in the indictment and sheds light upon the motive of defendant, or (b) Where it forms a part of a chain of facts so intimately connected, that the whole must be heard in order to interpret its several parts, or (c) In cases of conspiracy, uttering forged instruments or counterfeit coin, and receiving stolen goods, for the sole purpose of showing a criminal intention."

That case, in its facts, is much like the present one, except the alleged crimes of rape occurred over a much longer period. In the opinion, the court quoted from the Texas supreme court, which court had formerly held that it was permissible, but later reversed itself, saying: "However, we were in error in so holding, inasmuch as said testimony is not admissible for the purpose of corroboration, and where the crimes are extraneous, not connected with, entirely independent of, and distinct from the one on trial, they can shed no light on the trial of accused, and its sole purpose would be to convict accused on general principles—that is, to show that accused was guilty of the crime of rape on trial because

he had previously committed other rapes. It could not be corroborative of the prosecutrix for her to testify to one rape, and then corroborate this fact by testifying to another rape. There is no rule of law supporting the proposition that a witness can corroborate herself by swearing to one fact, and then swearing to another fact, and insisting that such other fact was corroborative of the previous statement."

Further, on page 618 of 106 Miss., 64 So. 373, 374, of Collier v. State, the court said: "In cases of rape, in so far as it concerns the testimony showing subsequent acts, we think that there should be no departure from the general rule of evidence that proof of a crime distinct from that alleged in the indictment must not be introduced against the accused."

In the more recent case of Willoughby v. State, 154 Miss. 653, 122 So. 757, 759, 63 A. L. R. 1319, this court said: "The general rule as adopted by our own court is that evidence of other crimes than the one for which the accused is being tried is inadmissible; and, if it be doubtful whether such evidence falls within any of the exceptions to the rule, it should be excluded. The one exception necessary for the court to consider, as urged by the attorney-general and as adopted by the trial court, is that the evidence to identify the accused as the person who committed the robbery is not to be excluded simply because such evidence proves, or tends to prove, that he was guilty of another and independent crime"—citing King v. State, 66 Miss. 502, 6 So. 188, 190, in which the court, in discussing the mischief that would result from the introduction of a large number of sales of liquor, held as follows:

"But what is of greater consequence to a defendant charged with a single offense, against whom evidence of numerous and different offenses has been admitted, is that, while he is entitled to have the concurring judgment of twelve men against him before he can be law-

fully pronounced guilty of the offense with which he is charged, he may in such case be convicted by a divided jury, or by a jury, no two members of which agree that he is guilty of the same offense. If there is evidence of two separate offenses, and the jury may convict of either, six of the jury may believe that the accused is guilty of the first, and not of the second, while the other six may believe that he is guilty of the second offense, and not of the first. The result would be that all the jury would agree that he was guilty, without agreeing on the offense of which he was guilty. And if, instead of testimony being produced to establish two distinct offenses, it shows twelve, it is possible that one juror might be convinced that the defendant was guilty of some particular one of the offenses, and of none other, and thus each juror might be convinced that he was guilty of some particular one of the offenses, and all agree to a conviction, and yet no two jurors be agreed upon any one offense.''

In Kolb v. State, 129 Miss. 834, 93 So. 358, we held that, in a prosecution for violating the Age of Consent Law (chapter 171, Laws of 1914; Hem. 1917 Code, section 1093), proof of one offense made a complete crime, and that it was error to prove subsequent acts in a prosecution under the statute.

As much as we regret the necessity of reversing this case, we are bound to accord the accused (the appellant) his legal rights, regardless of the heinousness of the offense. The judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.